GRAND RAPIDS & INDIANA RAILWAY CO. *v.* MICHIGAN.
RAILROAD COMMISSION.

1. RAILROADS — MICHIGAN RAILROAD COMMISSION — ORDERS —
   SWITCHING PRIVILEGES—CONTRACTS.
   In a proceeding before the railroad commission to compel
   a railroad corporation to provide switching facilities with-
   out requiring the agreement or consent of the person to
   be served to the imposition of unreasonable terms, as in
   other proceedings before the commission, unnecessary
   formality should be dispensed with; complaints should be
   considered with reference to the real substance of the
   issue presented.  It should appear from the record what
   distinct issues are raised by the petition and proceedings.[1]

[1] Upon the power to compel railroad to build or maintain
side tracks for accommodation of shippers, see note in 28 L. R.
A. (N. S.) 1013.

2. SAME—PETITION—PRACTICE BEFORE RAILROAD COMMISSION.

Though the petition filed with the commission praying for relief stated that it was the practice and regulation of the respondent to require the execution of a certain lease or agreement as a condition precedent to the construction and maintenance of a switch connection, and an examination of the contract so employed showed that it related to the construction of spur or side tracks and only the question whether the railroad company might impose certain condition before it proceeded to construct a side track to the premises of shippers, was involved, the issue will be considered as properly raised and disposed of by the commission, on a record indicating that the true question was presented before the railroad commission by the parties, and was determined by the order of that body.

3. SAME.

An order of the railroad commission exceeded the statutory authority of the commission, which determined that a form of agreement employed by defendant railroad corporation relative to side tracks was invalid in that it provided for priority of right to use the side track when constructed by the railroad at the expense of the shipper, or when paid for by him thereafter, that the railroad might extend the track through his premises without permission, that the railroad might discontinue service upon breach of any of the conditions of the contract and might remove the track, that the shipper must route his freight over the lines of the railroad, assume all risk of fire, and maintain a specified clearance, where the judgment of the commission also specified that no such agreement should be employed and stated maximum terms that could be imposed on the shippers.

4. SAME—CARRIERS.

If the duty to build private spur or side tracks was an absolute duty of the carrier no universal rule governing the terms and conditions under which the duty should be performed could be fixed; the reasonableness of any order requiring the railroad to perform that duty would always be open to question and the peculiar circumstances of each case would determine the reasonableness of the order.

5. SAME—REGULATION OR PRACTICE.

A practice or regulation of the railroad company is not

made out by a showing that in every instance it required a certain agreement to be executed before it would perform its duty, and jurisdiction was not conferred on the commission by the averments of such complaint to enact a universal rule or regulation governing each case of side track construction.

6. Same—Orders—Validity.

Whether a side track should be built and, if built, the relations that should be established between carrier and shipper are matters of private not public concern, unless the legislature has determined otherwise, and in the absence of such legislation the practice in such cases is not under the control of the commission.

7. Same—Statutes.

Before the enactment of Act No. 300, Pub. Acts of 1909 (3 How. Stat. [2d Ed.] § 6524 *et seq.*), no duty was imposed by the legislature to construct side tracks for private shippers, and until the passage of such act, the carrier could determine the conditions under which it would construct or maintain private tracks, so that a complaint filed before the statute of 1909 went into effect would not be governed by the enactment.

Appeal from Kent; Brown, J. Submitted June 15, 1914. (Docket No. 29.) Decided December 19, 1914.

Bill by the Grand Rapids & Indiana Railway Company against the Michigan Railroad Commission for an injunction and other relief. From a decree for defendant, complainant appeals. Reversed.

*James H. Campbell,* for complainant.

*Frank E. Robson* and *Henry Russell,* for Michigan Central Railroad Co., intervener.

*Beaumont, Smith & Harris* (*Grant Fellows,* Attorney General, of counsel), for defendant.

In May, 1908, a voluntary association, called the Michigan Manufacturers' Association, filed with the Michigan Railroad Commission a petition against

the Grand Rapids & Indiana Railway Company, in which it is alleged that it is a practice and regulation of the said company to require the execution of a certain lease or agreement (setting out a copy) as a condition precedent "to the construction and the maintenance of a switch connection with the private side track of any shipper tendering traffic for transportation;" that the practice or regulation is unreasonable, unjust, and discriminatory, and in violation of Act No. 312 of the Public Acts of 1907; that "the provisions of said lease contained in clauses 1, 2, 3 and 4 thereof are in violation of section 4 of said act, in that the enforcement thereof constitutes an unjust and unreasonable charge for the receiving, switching, and delivering of freight;" that the provisions of clause 6 "of said lease" are in violation of section 6 of said act, in that said clause—

"Provides that, in case the second party to said lease, namely, the shipper, should fail to observe the provisions of said clause as to the shipments of freight over the lines of said railroad, described in said lease as the first party thereto, the said railroad may terminate the lease, take possession of the premises, and refuse to maintain and operate switch connections over the tracks referred to in said lease; (b) in that the enforcement of the provisions of said clause constitute an unlawful discrimination against the shipper; (c) in that the switch connection to be constructed, maintained, and operated would, if constructed, maintained, and operated under the provisions of said clause, not be so constructed, maintained, and operated upon reasonable terms."

It is further alleged:

"That the provisions of said lease are in violation of section 16 of said act, in that said lease provides for the charging or receiving of a greater or less compensation for the service rendered by the carrier than that prescribed in the public tariff or than it charges, demands, collects, and receives for a like and contemporaneous service in the transportation of like kind

of tariff under substantially similar circumstances and conditions."

"That the provisions of said lease and of clauses 7 and 8 are in violation of section 6 of said act: (*a*) In that the enforcement thereof is a discrimination against the shipper, otherwise described as the party of the second part in said lease; (*b*) in that a switch connection constructed, maintained, and operated under the provisions of said clause 3 would not be constructed, maintained, and operated upon reasonable terms, but would so be constructed, maintained, and operated upon unreasonable terms; (*c*) in that, by the terms of said section 6, it is the duty of said railroad company to construct, maintain, and operate upon reasonable terms a switch connection with any private side track, when such connection is reasonable, practicable, and can be put in with safety, and will furnish sufficient business to justify the construction and the maintenance of the same, and it is its further duty to furnish cars and to transport to the best of its ability any traffic tendered to, over, or from such private side tracks, whereas, said clauses 7 and 8 of said lease limit the liability of said railroad company in the performance of the duty above referred to, wherefore the provisions of said clause are not unreasonable and void."

It is prayed:

"That the said commission will proceed to the consideration and determination of the said complaint, and that said lease and the said practice and regulation shall be held to be unreasonable, unjust, discriminatory, and illegal, and that the said commission shall so determine, and shall likewise determine, and by its order shall fix, a reasonable regulation or practice to be observed and followed in the future in lieu thereof, and shall likewise order that the said Grand Rapids & Indiana Railway Company shall cease and desist from the said practice and regulation, and shall conform to the order of the commission and the regulation and practice in said order prescribed, and for such other and further relief as to the commission shall seem just."

The instrument, a purported copy of which is at-

tached to this petition, is headed, "Side-Track Agreement." An order was made for a hearing upon the petition, an answer was filed, hearing had, and September 30, 1909, a decision was rendered. The order of the commission, to which is attached a form of instrument headed "Side-Track Agreement," proceeds as follows:

"Complaint having been filed by the complainants herein alleging that the above-named defendants then had, in effect, certain unreasonable, unjust, and unlawful regulations and practices relative to side-track leases and agreements, and thereupon, investigation having been had thereon by this commission, in accordance with the statute in such case made and provided, and in the course of such investigation having had a hearing thereon, at which all parties in interest were heard, and the commission having then entered upon the consideration of the said side-track leases and agreements required by said defendants, and upon such investigation and careful consideration the commission having found the existing side-track leases and agreements contain unreasonable, unjust, and unlawful regulations and requirements: Now, therefore, for the reasons set forth in the opinion of the commission this day filed, it is hereby determined by this commission: That the existing side-track leases and agreements required by said defendants in this State contain unreasonable, unjust, and discriminatory provisions. That the regulations and practice of requiring the execution on the part of shippers of such side-track leases and agreements containing such unreasonable, unjust, and discriminatory provisions does exist, and that such practice is unreasonable, unjust, and discriminatory. That said defendants shall cease and desist from the regulation and practice of requiring the side-track leases and agreements as described in the said petition in this cause. That side-track agreements and leases executed after the date of this order shall not contain requirements in any way providing:

"(a) That the railroad company shall have priority of right to the use of the side track when constructed upon the shipper's premises and at his expense, or

when, after construction by the railroad company, it has been paid for by such shipper.

"(*b*) That during the time such side track remains the property of the shipper the railroad company may extend same through the shipper's premises without his permission.

"(*c*) That the railroad may at its option, if the shipper fails to comply with the contract, discontinue the service and remove the track.

"(*d*) That the shipper on whose premises and at whose sole expense the side track was constructed must route his freight over the operating railroad lines.

"(*e*) That the shipper must assume risk of fire and release the railroad from all liability for loss or injury by fire.

"(*f*) That the shipper maintain a clearance as to said side tracks to exceed 22 feet overhead and 6 feet from the rail on either side thereof.

"That the provisions of the following agreement are prescribed as the maximum provisions that may be required by the railroad as preliminary to the construction or operation of side tracks after the date of this order, where such side tracks are to be constructed or where leases or agreements now in existence may have expired."

The defendant railway company thereupon filed its bill in the circuit court for the county of Kent, in chancery, setting up the proceedings had before the Michigan Railroad Commission and its conclusions, asking for a decree adjudging the order of the said commission to be wholly nugatory and void, and for general relief. The bill was answered, and the court, upon the bill and answer and the testimony adduced before the said commission, made and entered a decree dismissing the bill, and, proceeding further, affirmed the order of the commission. From this decree the Grand Rapids & Indiana Railway Company has appealed. It submits for consideration and argues the following propositions:

"(1) It is not the duty of a railroad company to

build, maintain, and operate a private side track. The matter is one wholly of private contract.

"(2) It is not within the police or any power of a State to require a railroad company to build, maintain, and operate a private side track not for any public use.

"(3) The order of the Michigan Railroad Commission and its enforcement would deprive the railway company of its constitutional right of private contract respecting its property and the use thereof, and would deprive the company of its property without due process of law, and deny to it the equal protection of the laws, and would exceed the police power of the State, all in violation of the Constitution of the United States.

"(4) The provisions in the order which require, or have the effect of requiring, a railway common carrier to use its property, tracks, and facilities for a private side track and to maintain and keep it in repair as a switch connection between a private side track and industry and other railroads at its own expense, and without compensation or consideration, would deprive the railway company of its property without due process of law in violation of the national Constitution.

"(5) The Michigan Railroad Commission had no jurisdiction of the subject-matter of the order.

"(6) The order of the commission does not relate to the subject-matter of the complaint, and the complaint gave the commission no jurisdiction to make the order requiring the railway company to construct and operate a private side track.

"(7) The provisions in the railway form of side-track agreement are lawful.

"(8) The findings in the order of the commission that the provisions in the railway form of agreement are unreasonable, unjust, unlawful, and discriminatory, and that the requirement of an agreement according to that form is unreasonable, unjust, and discriminatory, are erroneous, and unwarranted by any evidence before the commission.

"(9) The order is unjust and unreasonable: (a) In prohibiting the use of the railway form of agreement and in the agreement prescribed; (b) in precluding the fire clause; (c) in requiring that the rail-

way company shall deliver and place on said side track, and take away therefrom promptly, all car load shipments billed to or by the shipper, and to make no charge therefor, and to maintain and keep in repair and operate the track for that purpose, and to take cars to and from the private side track for other competing railroads without charge, except the ordinary switching charge, all without any regard to the conditions or cost of the service; (*d*) in the requirement that the railway company shall maintain all such service and keep the side track in repair and operate it as long as the industries served by the side track are in operation; (*e*) in the requirement that the railway company shall not remove nor cease to render service over the side track or its connections even after purchase thereof by the railway company until the annual revenue for services on the side track shall be less than 10 per cent. upon the amount paid by the shipper for its construction.

"(10) The order in its terms applies to interstate, as well as intrastate, shipments. In so far as it applies to interstate shipments, it is an unlawful interference with interstate commerce and the exclusive power of congress over that commerce. But the order must be construed and limited as applying only to cars in intrastate shipments wholly between points in Michigan."

It is made to appear that the Michigan Central Railroad Company and the Pere Marquette Railroad Company were in like manner, by the same petitioner, complained of, and that the action of the commission affected each of these companies. The order of the commission found in the record runs against all of them by name. Whether any company other than the complainant directly sought relief from the order by the action of a court does not appear, beyond this: It is stated in the brief that the order of the commission as to companies other than complainant abides the result of this suit. Briefs for the Michigan Central Railroad Company have been filed, in which is asserted want of jurisdiction of the commission over the subject-matter, with a discussion of the stipulations

prohibited by the commission, and the further contention is made that the effect of the order is necessarily to burden and regulate interstate commerce.

· OSTRANDER, J. (*after stating the facts*). The Michigan Railroad Commission is a body possessing limited powers, to be ascertained by reference to the statute creating it. It may enforce its orders by application to the courts, and its orders are reviewable by the courts. In proceedings before it, unnecessary formality is, and should be, dispensed with, and complaints such as were made in the matters now before us ought to be considered, as the commission in its opinion says, with reference to "the real substance of the issue presented."

But the necessity for distinct issues, discoverable from the record which is made, is apparent, since it is by the record that the court must determine whether the jurisdiction of the commission has been exceeded. These observations are made here because it seems to us that the complaint which set the commission in motion is lacking in certainty; the real issue—the one determined by the commission—not being the one immediately suggested by reading the complaint.

Referring to the complaint, we find it states that "it is the practice and regulation" of the said railroad company "to require the execution of a certain lease or agreement, a copy of which is hereto attached and marked 'Exhibit A,' as a condition precedent to the construction and the maintenance of a switch connection with the private side track of any shipper tendering traffic for transportation," and that the practice or regulation is unreasonable, unjust, discriminatory, and in violation of the act. Referring to the act, it is found that the legislature has enjoined upon railroads the duty "upon application of any shipper tendering traffic for transportation" to construct, maintain, and operate upon reasonable terms a switch connection

with any private side track, when such connection is reasonable, practicable, and can be put in with safety, and will furnish sufficient business to justify the construction and maintenance of the same. Section 6 (*a*). Reading the statute and that portion of the complaint referred to together, it would appear that the railroad company, instead of obeying the statute, made it a practice to disobey it, and to refuse switch connections with private side tracks, unless an objectionable contract was first made with the shipper. No such complaint was considered by the commission. The form of agreement attached to the complaint indicates that no such issue was intended to be presented. The agreement relates entirely to the construction and maintenance of a side track by the railroad company to the plant of some person or corporation. When completed and executed, it would embody the terms upon which the railroad company undertook, upon request of the shipper, to construct and maintain a side track connecting with its line of road running to the plant or place of business of the shipper. The order of the commission relates, not at all to establishing switch connections with private side tracks, but wholly to side-track agreements and leases, and, attached to the order, is a form of agreement containing "the maximum provisions that may be required by the railroad as preliminary to the construction or operation of side tracks after the date of this order, where such side tracks are to be constructed or where leases or agreements now in existence may have expired." The railroad company seems, however, not to have mistaken the question intended to be raised, as is indicated by the answer which was filed, and so we proceed to examine the arguments made for and against the validity of the order of the commission.

The commission found: *First*, that it was a practice and regulation of the railroad company to exact from those requesting the building and maintenance

of side tracks an agreement or contract; *second,* that "the existing side-track leases and agreements required by said defendants in this State contain unreasonable, unjust, and discriminatory provisions," and that the regulation and practice of requiring them is unreasonable, unjust, and discriminatory, and it determined that defendants cease and desist from the regulation and practice of requiring such agreements "as described in the said petition in this cause," and that "side-track agreements and leases executed after the date of this order shall not contain requirements in any way providing"—enumerating provisions found to be unreasonable, unjust, and discriminatory. In effect, the commission decided, not that railroad companies shall construct and maintain side tracks in any case, not that construction and maintenance may not rest upon agreement, but that, if they do decide to agree to construct and maintain them, they—and this, of course, includes the shipper and railroad—may not agree to certain things. And the order is universal, applying to every case, whatever the circumstances of the case may be. In my opinion, the validity of the order must be denied.

1. If the duty to build, maintain, and operate so-called private spur or side tracks was an absolute duty of the railroad company, no universal rule governing the conditions and circumstances under which the duty should be performed could be made. The reasonableness of an order requiring the performance of such a duty would be always open to question, and, manifestly, in each case, the peculiar circumstances would determine the question of the reasonableness of the order. *Oregon Railroad & Navigation Co.* v. *Fairchild,* 224 U. S. 510, 528, *et seq.* (32 Sup. Ct. 535, 540). It is true, and has been already stated, that the order in question does not require the railroad company to build or maintain or operate any track. The order was made, however, in contemplation of the fact that

shippers desire side tracks to be constructed, and that railroad companies accede to the desire and build side tracks. The right to build at all is denied, unless the order be complied with. This is a practical denial of a hearing in each case, if one is desired, and a prejudgment of rights. ·

"Since the decision in *Wisconsin, etc., Railroad* v. *Jacobson,* 179 U. S. 287 [21 Sup. Ct. 115], there can be no doubt of the power of a State, acting through an administrative body, to require railroad companies to make track connection. But manifestly that does not mean that a commission may compel them to build branch lines, so as to connect roads lying at a distance from each other; nor does it mean that they may be required to make connections at every point where their tracks come close together in city, town, and country, regardless of the amount of business to be done, or the number of persons who may utilize the connection, if built. The question in each case must be determined in the light of all the facts, and with a just regard to the advantage to be derived by the public and the expense to be incurred by the carrier. For while the question of expense must always be considered (*Chicago, etc., Railroad* v. *Tompkins,* 176 U. S. 167, 174 [20 Sup. Ct. 336]), the weight to be given that fact depends somewhat on the character of the facilities sought. If the order involves the use of property needed in the discharge of those duties which the carrier is bound to perform, then, upon proof of the necessity, the order will be granted, even though 'the furnishing of such necessary facilities may occasion an incidental, pecuniary loss.' But even then the matter of expense is 'an important criteria to be taken into view in determining the reasonableness of the order.' *Atlantic Coast Line Railroad* v. *North Carolina Commission,* 206 U. S. 1, 27 [27 Sup. Ct. 585, 11 Am. & Eng. Ann. Cas. 398]; *Missouri Pacific Ry.* v. *Kansas,* 216 U. S. 262 [30 Sup. Ct. 330]. Where, however, the proceeding is brought to compel a carrier to furnish a facility not included within its absolute duties, the question of expense is of more controlling importance. In determining the reasonableness of such an order, the court must consider all the

facts—the places and persons interested, the volume of business to be affected, the saving in time and expense to the shipper, as against the cost and loss to the carrier. On a consideration of such and similar facts the question of public necessity and the reasonableness of the order must be determined. This was done in *Wisconsin, etc., Railroad* v. *Jacobson*, in which, for the first time, it was decided that a State commission might compel two competing interstate roads to connect their tracks.

"It appeared on an examination of the facts in that case that on one of the lines there was an immense supply of wood, for which there was a great demand at points on the other, where there was none, and that if the connecting track was installed, there would be a saving in time and freight on this large volume of business. It also appeared that many cattle were raised on one line, for which there were important markets on the other, and that without the track connections these cattle would have to be hauled over a much longer route, with a resulting loss in weight and value. The advantage to the public was so great that the order requiring the track connection was sustained, in spite of the fact that one of the roads was thereby deprived of the revenue which it would otherwise have received for the longer haul. But the court said (179 U. S. 301 [21 Sup. Ct. 1115]), that:

" 'In so deciding we do not at all mean to hold that under no circumstances could a judgment enforcing track connection between two railroad corporations be a violation of the constitutional rights of one or the other, or possibly of both such corporations. It would depend upon the facts surrounding the cases in regard to which the judgment was given. The reasonableness of the judgment with reference to the facts concerning each case must be a material, if not a controlling, factor upon the question of its validity. A statute, or a regulation provided for therein, is frequently valid, or the reverse, according as the fact may be, whether it is a reasonable or an unreasonable exercise of legislative power over the subject-matter involved. And in many cases questions of degree are the controlling ones by which to determine the validity, or the reverse, of legislative action.' "

*Oregon Railroad & Navigation Co.* v. *Fairchild, supra.*

The language quoted relates to a requirement that a track connection be established between railroads, but the reasoning is pertinent here.

The universality of the rule established by the order of the commission condemns it.

2. Assuming, what is doubtful, that the complainant railroad company in every case, no matter what the circumstances surrounding it, would refuse to make agreements other than the one found to be objectionable, a practice or regulation within the meaning of the act is not thereby made out. This sufficiently appears from a reading of the act and the particular context wherever these terms are used. For example, in section 22 (*a*) it is provided that:

"Upon complaint of any person, firm or corporation   *   *   *   that any regulation or practice whatsoever affecting the transportation of persons or property, or any service in connection therewith, are in any respect unreasonable or unjust,   *   *   *   the commission may notify the railroad complained of that complaint has been made, and   *   *   *   may proceed to investigate the same.   *   *   *"

If a side track is constructed, and cars are moved over it, the transportation of persons and property may be affected. Whether a side track shall be built, and, if built, the relations which shall be established by agreement between the railroad constructing it and the private shipper, are not usually, if ever, in the absence of legislation, matters of public concern. By section 14 of the act the commission is given control over private side tracks in so far as the same are used by common carriers, and innumerable cases may be conceived in which it might be called upon, within its powers, to exercise such control. But a practice of the railroads to build and maintain side tracks only by an arrangement of its own and the shippers' private rights is not, in the absence of legislation, a practice to be controlled by the commission.

3. What the commission did was, not to administer, but enact, a law. The legislature alone can impose upon railroads the duty to construct private side tracks. When the complaint was made, it had imposed no such duty. Having the right to construct or refuse to construct or maintain a particular track, the complainant had the right to impose the terms upon which it would construct and maintain it. This is settled beyond doubt by our own decisions and those rendered in other jurisdictions. *Mann* v. *Railroad Co.*, 135 Mich. 210 (97 N. W. 721). This right the order of the commission would take away.

Without entering upon an examination of many interesting phases of the subject-matter discussed in the briefs, we are content to rest decision upon the points above stated; the more so because the legislature, after the complaint was made to the commission, and before the decision of the commission was handed down, imposed upon railroads, in terms, the duty to build spur tracks to and to and upon the grounds of shippers upon certain terms and subject to certain contingencies. The enactment (Act No. 300, Pub. Acts 1909, § 6, subd. "*b*") reads:

"Every railroad shall provide a reasonable, adequate and suitable spur track to and to and upon the grounds of any mill, elevator, storehouse, warehouse, dock, wharf, pier, manufacturing establishment, lumber yard, coal dock or other industry or enterprise, wherever such spur track does not necessarily exceed two miles in length and is practically indispensable to the successful operation of any such industry or enterprise, and shall connect such spur track with its main track and operate the same in connection therewith: *Provided,* that such railroad may require the person or persons, firm, corporation or association primarily to be served thereby, to pay the legitimate cost and expense of acquiring by condemnation or purchase where necessary the rights of way for such spur track, and of constructing the same, in which case the total estimated cost thereof shall be deposited with the rail-

road before the railroad shall be required to incur any expense whatever therefor.    No railroad shall, however, be required to provide a spur track where it is unusually unsafe and dangerous:    *Provided,* that in the event of the failure of said shipper and the said railroad to agree, the necessity for, reasonableness of, and practical safety of such spur track and connection and the operation thereof shall be decided by the said Michigan Railroad Commission upon complaint and hearing as provided in section twenty-two of this act."

This act was called to the attention of the commission by the answer of the railroad.  We need not now inquire whether this legislation may be sustained. Assuming it to be valid, the duties of the commission are pointed out with respect to disagreements between the railroad and a shipper in a particular case.  If the legislation shall be held to be invalid, it is nevertheless an expression of legislative opinion that the commission had theretofore no such powers as were assumed in the matter at bar.

The decree of the circuit court is reversed, and a decree will be entered in this court in accordance with the prayer of the bill.

MCALVAY, C. J., and STONE, MOORE, and STEERE, JJ., concurred.  BROOKE, KUHN, and BIRD, JJ., did not sit.