DETROIT EDISON COMPANY *v.* CORPORATION & SECURITIES COMMISSION.

1. TAXATION—ELECTRIC UTILITY COMPANY—PUBLIC SERVICE COMMISSION—ACCOUNTING.

    The corporation and securities commission must abide by the accounting and tax-calculating procedures an electric utility company has followed under orders of the public service commission, where the latter commission has been vested by statute with authority to regulate such utility and to prescribe its uniform methods of keeping accounts (CL 1948 and CLS 1956, § 460.1 *et seq.*).

2. SAME—SURPLUS—ELECTRIC UTILITY COMPANY—ANNUAL PRIVILEGE FEE—RESERVE FOR DEFERRED FEDERAL INCOME TAXES.

    *Surplus* of an electric utility corporation for purposes of determining the annual franchise fee to be paid by the corporation, is governed by pertinent accounting procedures prescribed by the public service commission pursuant to statutory authority conferred upon it and observed by the corporation, hence, reserve for deferred Federal income taxes, established to meet possibility of higher income taxes when accelerated depreciation benefits as to certain property were exhausted, was not to be included as surplus in computing the corporation's annual privilege fee (CLS 1956, § 450.304; CL 1948 and CLS 1956, § 460.1 *et seq.*).

CARR, C. J., and SOURIS, J., dissenting.

Appeal from Court of Claims; Quinn (Timothy C.), J., presiding. Submitted January 9, 1962. (Docket No. 49, Calendar No. 49,272.) Decided July 2, 1962. Rehearing denied September 7, 1962. Motion of Public Service Commission to participate in rehearing as *amicus curiae* denied September 7, 1962.

Detroit Edison Company, a New York corporation, filed its claim against State of Michigan and

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 51 Am Jur, Taxation § 817 *et seq.*

Michigan Corporation and Securities Commission for refund of payment, made under protest, of additional sums following redetermination of its annual franchise fee. Judgment for plaintiff. Defendants appeal. Affirmed.

*Fischer, Sprague, Franklin & Ford (Harvey A. Fischer, Gerald C. Simon,* and *George F. deClaire,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Joseph B. Bilitzke,* Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistant Attorneys General, for defendants.

*Frank J. Kelley,* Attorney General, *Eugene Krasicky,* Solicitor General, and *Benjamin F. Gibson* and *Hugh B. Anderson,* Assistant Attorneys General, for Michigan Public Service Commission to participate in rehearing as *amicus curiae.*

SOURIS, J. (*dissenting*). In *Detroit Edison Co.* v. *Corporation & Securities Commission,* 361 Mich 150, only 2 members of this Court* reached and decided the substantive issues raised in that case and again raised in this one. The principal issue is whether an item appearing on plaintiff's balance sheet as a liability under the caption "reserve for deferred Federal income taxes" should be treated as "surplus" for franchise fee purposes under PA 1921, No 85, § 4, as amended by PA 1954, No. 144.† The franchise fee involved in the earlier cited case was for the year 1956; involved here is the fee for 1958. The procedural issue on which the prior case was decided by our majority is not involved in this appeal from the

---

* Justices EDWARDS and TALBOT SMITH, both of whom have since resigned.

† For statute then in force see CLS 1956, § 450.304 (Stat Ann 1959 Cum Supp § 21.205).—REPORTER.

court of claims. In all other material respects the facts and the issues are the same.

In the prior case, beginning at p 162, Mr. Justice EDWARDS considered and succinctly resolved the substantive issues presented once again in this appeal. Absent the procedural issue which previously divided the members of this Court, we are able now to agree with his reasoning and his conclusions.

Accordingly, the judgment below should be reversed and this cause be remanded for entry of a judgment in accordance herewith. No costs should be taxed, matters of statutory construction being involved.

CARR, C. J., concurred with SOURIS, J.

BLACK, J. The ultimately meritorious question which, in *Detroit Edison Co.* v. *Corporations & Securities Commission,* 361 Mich 150, was left undecided,* faces us again. It is the subject of 2 recorded and hopelessly oppugnant judicial opinions. Neither opinion is necessarily controlling. One was prepared by former Justice EDWARDS, writing then for a minority of 2. It appears in the cited case starting on page 158 of the volume. The other was handed down by Judge Quinn, of the 40th judicial circuit. The presently scrutinized judgment was entered on strength of the latter opinion.

It is proposed now, by Justice SOURIS, that we adopt the EDWARDS opinion. That opinion concludes that the attorney general's submitted view of the term "surplus" (refer to CLS 1956, § 450.304 [Stat Ann 1959 Cum Supp § 21.205]) should be adopted and applied in reversal of Judge Quinn's judgment. On the other hand, convinced that Judge Quinn's

---

* It was held that the disputed amount of Detroit Edison's 1956 privilege fee had been determined by an illegally assembled appeal board and the case was remanded accordingly.

view of decisive and pretrial-agreed issue 4–(a) is unanswerably sound, I would hold that the defendant corporation and securities commission was and is— for the relevant purposes of the act in which said section 450.304 appears—legally bound to abide the accounting and tax-calculating procedures plaintiff has followed and that said commission had and has no right to determine or redetermine the amount of plaintiff's annually payable privilege fees contrary to such procedures. Judge Quinn ruled, and I agree:

"Now, first of all, with respect to issue (a) under paragraph 4 of the pretrial statement, which is stated as follows:

" 'Is the corporation and securities commission bound by the accounting procedures set up by the Michigan public service commission with respect to utilities in determining the annual franchise fee?'

"The public service commission is a body set up by statute to control and regulate public utilities with an idea of protecting the stockholders and the utilities as well as the consumer public. They set the rates, and so forth. By statute and regulation, which is R–460.600 in the administrative code [1954], they prescribe in great detail the system of accounts that the utilities like the Detroit Edison must keep, and exhibits E and F in this record indicate 2 rulings by the public service commission that an item similar to the item involved in this litigation shall not be carried on the books of the company as surplus, and to this court it is incongruous that that order of the public service commission would not be binding on another branch of the State for another purpose, and it is the opinion of this court that the 2 orders, shown in exhibits E and F,* of the public service commission are binding on the corporation and securities commission so far as the classification of the item involved in this litigation is concerned."

Now for what would seem to be controlling facts;

---

* Exhibits E and F are the presently mentioned orders of 1951 and 1954.

facts made by unequivocal statutes granting broad and exclusive powers—to the public service commission—of long since exercised superintendence over the electric utilities of Michigan and the accounting procedures thereof. It was and is provided, by original and present section 6 of the public service commission act of 1939, as amended (CL 1948 and CLS 1956, § 460.1 *et seq.,* [Stat Ann 1959 Cum Supp § 22.13(1) *et seq.*]):

"Sec. 6. The Michigan public service commission is hereby vested with complete power and jurisdiction to regulate all public utilities in the State except any municipally owned utility and except as otherwise restricted by law. It is hereby vested with power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service and all other matters pertaining to the formation, operation, or direction of such public utilities. It is further granted the power and jurisdiction to hear and pass upon all matters pertaining to or necessary or incident to such regulation of all public utilities, including electric light and power companies, whether private, corporate or cooperative, gas companies, telephone, telegraph, oil, gas, and pipeline companies, motor carriers, and all public transportation and communication agencies other than railroads and railroad companies."[*]

The foregoing grant of superintendence has remained complemented by a separate grant—to the public service commission—of power to "prescribe uniform methods of keeping accounts to be observed by all * * * corporations engaged in such business of transmitting and supplying electricity." (Quotation from CL 1948, § 460.556 [Stat Ann § 22.156].) The precise as well as exclusive extent to which these powers have been exercised fully appear upon examination of the "Uniform system of ac-

---

[*] By PA 1960, No 44, the quoted portion of section 6 was amended solely to include the word "water," after the words "gas companies."

counts for electric utilities," which system the public service commission has promulgated and enforced pursuant to such statutory power. See the Michigan administrative code of 1954, pages 5954–6074.

From the above let us turn to the fact of affirmative action, taken duly by the public service commission with respect to plaintiff's presently questioned accounting procedures. August 8, 1951, under the heading "Order authorizing certain accounting entries," the commission issued an order authorizing and directing plaintiff Detroit Edison:

"(a) To charge to 'Provision for deferred Federal income taxes' as a separate subaccount under account 507–Taxes, and to credit to 'Reserve for deferred Federal income taxes' as a separate subaccount under account 258.2—Miscellaneous reserves, an amount or amounts in total for each year equal to the reduction in Federal income taxes arising out of special amortization, as provided in section 124A of the internal revenue code, rather than normal income tax depreciation of the cost of such facilities."*

November 5, 1954, under the heading "Accounting order," the commission issued another order authorizing and directing plaintiff Detroit Edison, "with respect to the Federal income tax results of any allowances for accelerated depreciation (or amortization) of properties which it·may elect to take under section 167, subd (b) (3) of the internal revenue code of 1954, to account therefor in the following

---

* The orders proper (excluding the prefatory premises thereof) of August 8, 1951 and November 5, 1954 are included as appendices "A" and "B" at end of this opinion. It is significant that the public service commission, in each instance, retained jurisdiction "in the matter here contained" and reserved the right to issue such further order or orders "as the circumstances may require."

The question naturally arises: Which of these currently conflicting determinations by 2 commissions (CSC and PSC) should this beset plaintiff recognize? In view of foregoing statutes the answer must be "PSC," at least until the latter decides, if it does decide, to order conformably with the determination of CSC.

manner" (exactly as it has done to the total dissatisfaction of the defendant commission and the attorney general).

Excepting as the latter may modify the former both orders remain in effect. We are advised that such orders do but reflect like orders issued over the years to other like utilities. Plaintiff has faithfully conformed with both. Notwithstanding all this, the defendant commission has assumed to rule that plaintiff may not employ the accounting procedures so authorized and ordered, at least for the purpose of calculating and determining the latter's annually payable corporate privilege fee. Thus we behold an unseemly collision of "determination" and "redetermination" by one agency of the State with contrary "orders" made by another. Yes, as Judge Quinn observed, this is quite "incongruous." Indeed, it is legally intolerable once the statutorily plenary supremacy of public service commission control, over Michigan electric service utilities, is fairly considered. Any other holding would sanction, judicially, the administrative whipsawing of any selected utility taxpayer by 2 agencies of one government, one ordering that it proceed as the other penalizes it for doing so.

If the plaintiff utility is to be governed, taxwise, by accounting rules other than those already prescribed by the public service commission, such other rules under present law will have to come into being by order of the same commission; the commission which, incidentally, is now carrying on a series of public hearings designed to provide aid in deciding whether it should or should not retain such previously ordered accounting procedures.*

---

* These hearings were instituted by special order of the public service commission dated March 22, 1962, headed "Order directing investigation and notice of hearing." They have, at the time of present writing, received widely publicized treatment in the daily press.

In the mentioned EDWARDS opinion it is said (without discussion of or reference to foregoing statutes) that "We are not concerned with whether or not this [Detroit Edison's presently questioned accounting procedure] is a sound accounting practice or good business, or even whether or not it is a procedure required by orders of the public service commission." (p 163 of report, 361 Mich.)

For reasons given above 1 respectfully disagree, now as before. We *are* concerned, in avoidance of internecive administrative warfare if for no other reason, with the validity and integrity of foregoing orders of the public service commission. I would uphold their controlling worth, thereby upholding that commission's superior and exclusive power to superintend public utilities as in the quoted statutes provided. This means that Judge Quinn, upon the stipulated record of facts, could do naught but enter judgment for this plaintiff.

The judgment of the court of claims should be affirmed.

KELLY, J., concurred with BLACK, J.

DETHMERS, J., concurred in result.

KAVANAGH, OTIS M. SMITH, and ADAMS, JJ., did not sit.

## APPENDIX "A"

Order (proper) of public service commission
dated August 8, 1951

"Now therefore, by virtue of the authority vested in this commission by law, the commission orders and directs as follows:

---

The commission's said order refers to existing orders "for special accounting authority relating to the use of liberalized depreciation" and defines them this way: "In general, these orders have approved the charging of the so-called income tax deferral to a subaccount under the 'Taxes' account, with a concurrent credit to an account designated 'Reserve for deferred Federal income taxes.' "

"1. The Detroit Edison Company is hereby directed and instructed with respect to the Federal income tax results of any allowances for amortization of emergency facilities which it may elect to take under section 124A of the internal revenue code, to account therefor in the following manner:

"(a) To charge to 'Provision for deferred Federal income taxes' as a separate subaccount under account 507—Taxes, and to credit to 'Reserve for deferred Federal income taxes' as a separate subaccount under account 258.2—Miscellaneous reserves, an amount or amounts in total for each year equal to the reduction in Federal income taxes arising out of special amortization, as provided in section 124A of the internal revenue code, rather than normal income tax depreciation of the cost of such facilities.

"(b) After such amortization under each necessity certificate is completed or is discontinued by the company and thereafter during the life of such property or until the earlier exhaustion of the portion of the reserve for deferred Federal income taxes related to such property,

"(1) to charge to 'Reserve for Federal income taxes' and to credit to 'Portion of current Federal income taxes deferred in prior years', (a separate subaccount under account 507—Taxes) an amount, or amounts, in total for each year for each necessity certificate, equal to the increase in the Federal income taxes payable for that year due to the fact that normal depreciation cannot be deducted because of previous amortization of the property under such necessity certificates, and

"(2) to charge to 'Reserve for deferred Federal income taxes' and to credit to 'Portion of current Federal income taxes deferred in prior years', an amount, or amounts, equal to any balance in said reserve at December 31 of each year for plant re-

tired during said year which had been amortized under such necessity certificate.

"(c) Within 60 days after the end of the first year in which amortization under each necessity certificate is taken and within 60 days after the end of each year thereafter during the life of the property included in said necessity certificates, The Detroit Edison Company shall by statement duly verified, report to this commission with respect to each necessity certificate, the amount of plant costs amortized, the resulting reduction in Federal income taxes, the entries made in accordance with this order, the cost of plant retired which was included in such necessity certificate, and any other pertinent data or calculations concerning the accumulation or disposition of the 'Reserve for deferred Federal income taxes' which the commission may request.

"(d) To provide in its books of account for retirement of the properties covered by the necessity certificates by appropriations to retirement (depreciation) reserve in amounts consistent with its practice for like property not covered by necessity certificates.

"The commission retains jurisdiction of the matters herein contained and reserves the right to issue such further order, or orders, as the circumstances may require."

## APPENDIX "B"

### Order (proper) of public service commission dated November 5, 1954

"Now, therefore, by virtue of the authority vested in this commission by law, the commission orders and directs as follows:

"1. The Detroit Edison Company is hereby authorized and directed, with respect to the Federal income tax results of any allowances for acceler-

ated depreciation (or amortization) of properties which it may elect to take under section 167, subd (b) (3) of the internal revenue code of 1954, to account therefor in the following manner:

"a. During the period when the annual allowances for depreciation of properties under section 167, subd (b) (3) are more than what would be the allowances for normal income tax depreciation of such properties under said section 167, subd (b) (1), to charge to 'Provision for deferred Federal income taxes arising out of section 167, I.R.C.' as a separate subaccount under account 507—Taxes, and to credit to 'Reserve for deferred Federal income taxes—section 167, I.R.C.' as a separate subaccount under account 258.2—Miscellaneous reserves, an amount for each year equal to the reduction in Federal income taxes payable for that year due to the fact that allowances for accelerated depreciation (or amortization) of properties pursuant to said section 167, subd (b) (3) are in excess of what would be allowable for normal income tax depreciation under section 167, subd (b) (1) of the internal revenue code of 1954.

"b. During the period when the allowances for depreciation of properties under said section 167, subd (b) (3) are less than what would be allowable for normal income tax depreciation, to charge to 'Reserve for deferred Federal income taxes—section 167, I.R.C.' and to credit to 'Portion of current Federal income taxes deferred in prior years' as a separate subaccount under account 507—Taxes, an amount for each year equal to the increase in Federal income taxes payable for that year due to the fact that allowances for accelerated depreciation (or amortization) of properties under section 167, subd (b) (3) for that year are less than the amount that would be allowable for normal depreciation under said section 167, subd (b) (1).

"2. Within 60 days after the end of the first year in which allowances for accelerated depreciation (or amortization) under said section 167, subd (b) (3) are taken, and within 60 days after the end of each year thereafter during which allowances for such depreciation under said section are taken, The Detroit Edison Company, by statement duly verified, shall report to this commission the amount of property costs with respect to which accelerated depreciation (or amortization) has been allowed for Federal income tax purposes under said section 167, subd (b) (3), the resulting decrease or increase in Federal income taxes, the entries made in accordance with this order and any other pertinent data or calculations concerning the accumulation or disposition of 'Reserve for deferred Federal income taxes —section 167, I.R.C.' which the commission may request.

"3. To provide in its books of account for retirement of its properties including those with respect to which it has elected to compute accelerated depreciation allowances under said section 167, subd (b) (3), by appropriations to account 250—Depreciation reserve, without giving effect to the amounts allowable for Federal income tax purposes.

"The commission retains jurisdiction in the matter here contained and reserves the right to issue such order or orders as the circumstances may require."