### DETROIT EDISON COMPANY v. CITY OF WIXOM.

OPINION OF THE COURT.

1. PUBLIC SERVICE COMMISSIONS—JURISDICTION.

The public service commission has complete power and jurisdiction to regulate all public utilities in the State except those municipally owned or as otherwise restricted by law (CLS 1961, § 460.6).

2. MUNICIPAL CORPORATIONS—ZONING ORDINANCES.

Power to enact zoning ordinances is not itself a local power, but comes from the zoning enabling act (CL 1948, § 125.581 et seq.).

----

REFERENCES FOR POINTS IN HEADNOTES

[1, 9, 13, 15] 43 Am Jur, Public Utilities and Services §§ 193–195.
   Applicability of public utility acts to municipal corporation owning or operating a public utility.  10 ALR 1432, 18 ALR 946.
[2] 58 Am Jur, Zoning § 7.
[3] 43 Am Jur, Public Utilities and Services § 193.
[4, 14] 26 Am Jur 2d, Electricity, Gas and Steam § 10; 43 Am Jur, Public Utilities and Services §§ 193–195.
[5, 7] 58 Am Jur, Zoning §§ 7, 9, 10, 49, 122.
[6] 26 Am Jur 2d, Electricity, Gas and Steam § 10.
[8] 43 Am Jur, Public Utilities and Services § 193.
[10] 58 Am Jur, Zoning §§ 7, 8.
[11, 12] 37 Am Jur, Municipal Corporations §§ 76, 78, 80, 102, 111, 165.

3. PUBLIC SERVICE COMMISSIONS—JURISDICTION—SPECIFIC POWERS —STATUTES.

The portion of the statute describing the jurisdiction of the public service commission grants no specific powers to the commission (CLS 1961, § 460.6).

4. SAME—TRANSMISSION OF ELECTRICITY—REGULATIONS.

The only specific powers given the public service commission to regulate the transmission of electricity are limited to transmission over public streets and highways, excluding transmission over a private right-of-way and regulating height of towers only at highways and railroad crossings; and the statute indicates by omission that the commission has no specific exclusive powers to determine tower height under other circumstances (Const 1963, art 7, § 29; CL 1948, §§ 460.551, 460.553, 460.554).

5. MUNICIPAL CORPORATIONS—ZONING ORDINANCE.

Zoning ordinance limiting height of towers and poles holding power lines was enacted by virtue of enabling act which provides no exclusion for electrical utilities and specifically provides for notice to utility companies owning or operating any public utility within the district to be affected by the ordinance (CL 1948, § 125.581).

6. SAME—STATUTES—REGULATIONS.

No statutory power or provision precludes a municipality from enacting reasonable regulations as to electrical utilities, but the limits of local regulation must be construed in the light of public purpose of public electric utilities, and their reasonableness is determined by weighing their relation to local conditions against their effect on the broad purpose.

7. ELECTRICITY—TRANSMISSION LINES—REGULATION—ZONING ORDINANCES.

Zoning ordinance regulating maximum height of towers on high-voltage electrical transmission line passing through municipality and carrying electrical energy between other municipalities *held,* to be within power of municipality to adopt, limited by reasonableness, as against argument that such regulation has been vested exclusively in public service commission by the legislature (CL 1948, § 125.851 *et seq.;* § 460.551 *et seq.*).

DISSENTING OPINION.
McGregor, J.

8. PUBLIC SERVICE COMMISSIONS—JURISDICTION—SPECIFIC POWERS—STATUTES.

> *The legislature in creating the Michigan public service commission intended only to set out an outline of the commission's jurisdiction and did not purport to do more (CLS 1961, § 460-.6).*

9. SAME—JURISDICTION—STATUTES—POWERS.

> *The public service commission has complete power and jurisdiction to regulate all public utilities except municipally owned utilities and except as otherwise restricted by law, power and jurisdiction to regulate all matters pertaining to formation, operation, or direction of such public utilities, and power to hear and pass on all matters pertaining or incident to such regulation of public utilities (CLS 1961, § 460.6).*

10. MUNICIPAL CORPORATIONS—REGULATIONS—PROHIBITION.

> *Legislative bodies of cities and villages can reasonably regulate and restrict the locations of trades and industry and the location of buildings, and such regulations are to be made in accordance with plans designed to lessen congestion on the public streets, promote public health, safety, and general welfare (CL 1948, § 125.581).*

11. SAME—STATE CONTROL—PRE-EMPTION.

> *Local government's assumption of regulation in area where the State has assumed control or has vested in a single State agency complete control of the grant of a right, permitted activity, or set of conditions, is void to the extent of conflict with State power.*

12. SAME—STATE CONTROL.

> *Local government or agency may exercise control and regulate those areas over which the State has assumed some control but has not completely covered the area for regulation.*

13. PUBLIC SERVICE COMMISSIONS—JURISDICTION—STATUTE.

> *The jurisdiction over public utilities given the public service commission by the public utility act is an exclusive grant to an administrative agency and no other regulation by a local agency is permitted (CLS 1961, § 460.6).*

14. SAME—EXCLUSIVE JURISDICTION.

> *Operations of electric power company, in purchasing of land for high-voltage electric transmission line and commencing*

construction on the land, after public service commission granted its permission to construct and operate a power line, became a part of the public utility and subject to the exclusive jurisdiction of the public service commission.

15. SAME—LEGISLATIVE GRANT—PRE-EMPTION—LOCAL ORDINANCES.
Legislative grant to Michigan public service commission of authority to regulate public utilities pre-empted that field so as to exclude local legislation, and ordinances so far as they pertain to the matter are unreasonable.

Appeal from Oakland; Adams (Clark J.), J. Submitted Division 2 December 5, 1966. (Docket No. 1,313.) Decided March 26, 1968. Leave to appeal granted June 3, 1968. See 381 Mich 754.

Complaint by Detroit Edison Company, a New York corporation, against City of Wixom, to enjoin enforcement of zoning ordinance and to have it declared void. Injunction granted. Defendant appeals. Reversed and remanded.

*Fischer, Sprague, Franklin & Ford,* for plaintiff.

*Schnelz & Bulgarelli* (*Louis C. Andrews, Jr.,* of counsel), for defendant.

J. H. GILLIS, J. The troublesome issue presented by this appeal is whether the legislature has granted exclusive authority to the public service commission to regulate public electric utilities so as to preclude a local government from attempting such regulation through its duly enacted zoning ordinances.

Factually the case is very simple as it comes to this Court. In 1955, the plaintiff, The Detroit Edison Company, realized a need to expand its services and in so doing to run a high voltage electrical transmission line from its plant in St. Clair, Michigan, to its plant in Monroe, Michigan. Plaintiff

purchased a right-of-way, including a strip of land 200 feet wide and 4 miles long, over lands which have since been incorporated by the defendant city of Wixom.

Plaintiff's plans were for a high tension line supported by towers 850 feet apart and averaging 132 feet in height. This particular portion of the route was approved by the Michigan public service commission on November 13, 1964.

Defendant was incorporated in 1958 and in 1960 a master plan for development was adopted. The city adopted an amendment to its zoning ordinance in 1965 providing in pertinent portions:

"Essential services serving the city of Wixom shall be permitted as authorized and regulated by law and other ordinances of the city of Wixom. Overhead or underground lines and necessary poles and towers to be erected to service primarily those areas beyond the city shall require the review and approval, after a public hearing, of the board of appeals. Such review of the board of appeals shall consider abutting property and uses as they relate to easements, rights-of-way, overhead lines, poles and towers and further, shall consider injurious effects on property abutting or adjacent thereto and on the orderly appearance of the city. A building permit shall be required for any such construction.
*    *    *

"Add footnote (p) to each box in the height column (in feet). The footnote (p) to read as follows:

"(p) No structure shall exceed 100 feet in height unless such structure has received the review and approval of the board of appeals."

Fearing the additional burdens imposed upon it by the regulatory provisions, Detroit Edison brought this action to have the above amendments declared null and void. Two grounds were asserted

by plaintiff in the trial court: (1) that by statutory grant of authority, the public service commission has pre-empted the field of regulation of electric utilities, and (2) that the amendatory provisions of defendant's zoning ordinance are void as being arbitrary, unreasonable, and discriminatory.

The trial judge ruled only on the first of these contentions, holding that the public service commission has pre-empted the field by virtue of CLS 1961, § 460.1 *et seq.* (Stat Ann 1965 Cum Supp § 22.13[1] *et seq.*). The language of the pertinent portion of this act provides:

"The Michigan public service commission is hereby vested with complete power and jurisdiction to regulate all public utilities in the state except any municipally owned utility and except as otherwise restricted by law. It is hereby vested with power and jurisdiction to regulate all rates, fares, fees, charges, services, rules, conditions of service and all other matters pertaining to the formation, operation or direction of such public utilities. It is further granted the power and jurisdiction to hear and pass upon all matters pertaining to or necessary or incident to such regulation of all public utilities, including electric light and power companies, whether private, corporate or cooperative, gas companies, water, telephone, telegraph, oil, gas and pipeline companies, motor carriers, and all public transportation and communication agencies other than railroads and railroad companies." CLS 1961, § 460.6 (Stat Ann 1965 Cum Supp § 22.13[6]).

Plaintiff contends that this broad statutory language expresses the legislative intent to vest exclusive power of regulation in the commission. Defendant argues that the language of the act does not expressly or by necessary implication preclude local government from regulating the height of electrical transmission towers under its zoning

powers to promote the health, safety, or welfare of its citizens.

The issue before us is simply whether the statutory language indicates legislative intent to vest sole power in the commission. If such a reading is proper, then it is clear that a local ordinance in conflict with the statutory powers of the commission would be of no force, *City of Howell* v. *Kaal* (1954), 341 Mich 585; *Gust* v. *Township of Canton* (1953), 337 Mich 137.

But the power to enact zoning ordinances is not itself a local power, but rather one which comes by virtue of the zoning enabling acts. What we deal with, in reality, are two or more statutes which may or may not conflict insofar as they purport to provide for the regulation of public utilities.

The portion of the act which we have quoted above, and on which plaintiff relies, has already been determined by our Supreme Court to be merely an outline of the commission's jurisdiction and not a grant of specific powers to the commission, *Huron Portland Cement Company* v. *Public Service Commission* (1958), 351 Mich 255; *Northern Michigan Water Company* v. *Public Service Commission* (1967), 5 Mich App 635, 638. As stated in *Huron, supra,* at p 263:

"If, indeed, the general language quoted had the effect of vesting particular, specific, powers in the commission * * * there would have been no need whatever for the many statutes enacted (both before and after the effective date of PA 1939, No 3) vesting specific powers in the commission."

Indeed, plaintiff's contention cannot find support in the broad grant to the commission but can only be sustained on a finding of some specific power with which local zoning powers would be inconsistent. See, for example, *Huron Portland Cement*

*Company* v. *City of Detroit* (1960), 362 US 440 (80
S Ct 813, 4 L Ed 2d 852, 78 ALR2d 1294) for the
Federal-State analogy.

The only specific powers given the commission to
regulate the transmission of electricity is the trans-
mission of electricity through highways act, CL
1948, § 460.551 *et seq.* (Stat Ann § 22.151 *et seq.*).
This act however is limited to transmission over
public streets, highways and places and therefore
does not include plaintiff's transmission over a pri-
vate right-of-way. It is of interest to note, however,
that even in this grant of specific power, the right
of reasonable control of streets is preserved to local
government, CL 1948, § 460.553 (Stat Ann § 22.153),
and Const 1963, art 7, § 29. Moreover, the electrical
transmission act does specifically regulate the height
of towers but only at highways and railroad cross-
ings.[1] Whether these specific restrictions would
apply to plaintiff in crossing highways or railroads
may be weighty arguments in going to the reason-
ableness of the ordinance, but they do indicate at
least the negative inference, that the commission has
no specific exclusive powers to determine tower
height under other circumstances.

Likewise we can find no implied grant of power
in the acts, necessary in carrying out any express
legislative intent, which would be inconsistent with
the zoning power. *Michigan Bell Telephone Co.* v.
*Public Service Commission* (1946), 315 Mich 533.
Such questions, it seems to us, go more to the rea-
sonableness of the zoning ordinance in question than
to inconsistency with any enumerated powers of the
commission.

Defendant's zoning ordinance is enacted by virtue
of CL 1948, § 125.581 *et seq.* (Stat Ann 1958 Rev
§ 5.2931 *et seq.*). The enabling act provides no ex-

---

[1] CL 1948, § 460.554 (Stat Ann § 22.154).

clusion for electrical utilities (as for instance the rural township zoning enabling act[2] makes for oil and gas wells) and in fact specifically provides for notice to utility companies owning or operating any public utility within the district to be affected by the ordinance. CL 1948, § 125.584 (Stat Ann 1958 Rev § 5.2934).

We can find no power or provision in the statutes precluding a municipality from enacting reasonable regulations as to electrical utilities. The limits of this local power are coincidental with the reasonableness of the ordinance under all the circumstances. Supply and transmission of electricity are essential to the development of this State and the well-being of its citizens. The limits of local regulation must be construed in the light of this public purpose and their reasonableness of course must weigh their relation to local conditions with their effect on the broad purpose.

The judgment is reversed and remanded to the trial court for findings and a ruling on plaintiff's contention of the substantive invalidity of the ordinance.

T. G. Kavanagh, P. J., concurred with J. H. Gillis, J.

McGregor, J. (*dissenting*). The plaintiff, a public utility company whose principal business is the furnishing of electrical power to southeastern Michigan, sought injunctive relief to protect itself from application of an ordinance of defendant city. Defendant city is located within the service area of the plaintiff and the plaintiff is franchised in the defendant city. Injunctive relief was granted in the trial court.

---

[2] CL 1948, § 125.271 (Stat Ann 1958 Rev § 5.2963[1]).

In the furtherance of serving southeastern Michigan, plaintiff was in the process of constructing a new high-voltage transmission line, the right-of-way for this line extending through defendant's boundaries.   The particular route and proposed plans were submitted to the public service commission, the State agency which has complete control and jurisdiction over nonmunicipal electric utilities, CLS 1961, § 460.6 (Stat Ann 1965 Cum Supp § 22.13[6]), and the proposed plans and route were approved by the public service commission on November 13, 1964.

The 200-foot-wide right-of-way was selected in 1955 and 1956, and purchases for this right-of-way were first made in 1956.   In 1956 the land in question was unincorporated and it did not become part of the village of Wixom until 1957, nor of the city of Wixom until 1958.   The total length of the land in the route involved extends from Pontiac to Wayne. The plaintiff's approved plans specified towers averaging 850 feet apart, with an average height of 132 feet each, through the city of Wixom, and were designed for voltage of 345 kv; about three times higher with about eight times greater transmission capacity than the usual 120 kv transmission line, one of which now passes through the city.   As set forth in the national electrical safety code, ground clearance of the new transmission line is 33 feet instead of the usual 28 feet.   This additional load system is to match the increased customer requirements.   Evidence showed that this proposed line could be replaced by 120 kv lines, but that it would take 2 separate lines to do so; that if towers were no more than 100 feet high it would require double the number of towers and at least 100 feet more right-of-way, but such a line would not comply with the provisions of the national electrical safety

code as adopted by the Michigan public service commission. Prior to June 8, 1965, the plaintiff had built a line from St. Clair as far as Pontiac.

On June 8, 1965, the defendant, in an emergency meeting, amended its zoning ordinance prohibiting the erection of utility towers over 100 feet in height, unless or until a permit had been obtained from the city. This amended zoning ordinance also placed approval of the right-of-way, size of towers and lines in the case of overhead lines whose primary service is beyond the city of Wixom, in the zoning board of appeals. It further prohibited erection of towers in excess of 100 feet in height without the approval of the zoning board of appeals.

The Michigan public service commission places a requirement for tower height at a minimum of 130 feet on lines carrying the higher voltage, such as is anticipated for the new line. Plaintiff has designed and partially completed its system to meet the requirements of the public service commission.

The court below found that it was not within the jurisdiction of the city to place a zoning ordinance in conflict with the jurisdiction of the public service commission, and granted an injunction permitting plaintiff company to continue construction of its lines across defendant's territory.

Plaintiff's contention is that the legislature has intended that electrical utilities be controlled by one central authority. It further contends that if there is State intent to regulate a particular area of activity, a local subdivision cannot regulate that same area, that the amended ordinance is in violation of the State statutes, is unreasonable, arbitrary, and discriminatory, and therefore, void.

Defendant city contends that the zoning ordinance is a reasonable regulation of a public utility by a city, that it was not the legislature's intent to vest

complete jurisdiction for the regulation of public utilities in the public service commission, that the zoning ordinance is within its province in protecting the health, safety and welfare of its people.

The power and authority of the public service commission is confined as follows:

"The Michigan public utilities commission is an administrative body created by statute and the warrant for the exercise of all its power and authority must be found in statutory enactments. *Grand Rapids & Indiana Railway Co.* v. *Michigan Railroad Commission,* 183 Mich 383. It has no common-law powers. *Taylor* v. *Michigan Public Utilities Commission,* 217 Mich 400 (PUR 1922 D, 198)." *Sparta Foundry Co.* v. *Michigan Public Utilities Commission* (1936), 275 Mich 562, 564.

In creating the Michigan public service commission the legislature only intended to set out an outline of the commission's jurisdiction and did not purport to do more. *Huron Portland Cement Company* v. *Public Service Commission* (1958), 351 Mich 255. This legislation (CLS 1961, § 460.6 [Stat Ann 1965 Cum Supp § 22.13(6)]) grants to the commission five-fold jurisdiction. The first is "complete power and jurisdiction to regulate all public utilities," with only exceptions of municipally owned utilities and other restrictions of law. The second grant is of "power and jurisdiction to regulate all * * * matters pertaining to the formation, operation or direction of such public utilities." The third grant is the power to hear and pass on all matters pertaining or incident to such regulation of public utilities. The fourth and fifth grants are not material to the issues of this case.

The jurisdiction of the city, as defendant contends, is set forth in CL 1948, § 125.581 (Stat Ann 1958 Rev § 5.2931), which allows the legislative body

of cities and villages reasonably to regulate and restrict the locations of trades and industry, and the location of buildings. These regulations may be imposed designating the uses for which buildings or structures shall or shall not be erected or altered. Such regulations are to be made in accordance with plans designed to lessen congestion on the public streets, promote public health, safety and general welfare. *National Amusement Co.* v. *Johnson* (1935), 270 Mich 613; *Noey* v. *City of Saginaw* (1935), 271 Mich 595; *People* v. *McDaniel* (1942), 303 Mich 90; *Richards* v. *City of Pontiac* (1943), 305 Mich 666; *City of Grand Haven* v. *Grocer's Cooperative Dairy Co.* (1951), 330 Mich 694.

Jurisdiction and any exercise of municipal control is governed in this State by a doctrine of preemption. This doctrine, in summary, provides that where the State has assumed control or has vested in a single State agency complete control of the grant of a right, permitted activity, or set conditions, the local government's assumption of regulation is void to the extent of conflict with the State power. This doctrine permits a local agency or government to exercise control and to regulate those areas over which the State has assumed some control but has not completely covered the area for regulation. *Loose* v. *Battle Creek* (1944), 309 Mich 1; *Miller* v. *Fabius Township Board* (1962), 366 Mich 250.

The public utility act gives complete jurisdiction over the public utilities to the public service commission. This is an exclusive grant. Exclusive grants to an administrative agency in this State cannot admit any other regulation by a local agency. *Noey* v. *City of Saginaw, supra.*

By plaintiff's previous and current purchases of land and commencement of construction operations

on such land, after the public service commission had granted its permission to construct and operate this line, the operations became part of the public utility. As such, the operations became subject to the exclusive jurisdiction of the public service commission.

The point made by the defendant that the public utility would have to obtain permits, licenses, et cetera, is well taken. This limitation is expressed in the statute as the jurisdiction being otherwise restricted by law. This we take to mean restriction existing at the time of regulation, and not such restriction as is made subsequent to that regulation. Any other interpretation would make the commission's power illusory and subject to the whim of every council of local government.

The grant of power in local boards respecting their prior regulations remains a dangerous situation. Ordinances of other eras may threaten the power supply of this State and, through interconnections, the power supplies of surrounding States and the province of Ontario. This is a matter for legislative correction. Every square foot of the area served by plaintiff is part of some municipal corporation, about 250 townships[1] and 500 cities and villages.[2] Each now has authority to adopt zoning ordinances.

The Supreme Court of Michigan regards the public service commission vested with plenary power over electric public utilities.

"It is legally intolerable once the statutorily plenary supremacy of public service commission control, over Michigan electric service utilities, is fairly considered. Any other holding would sanc-

---

[1] CL 1948, § 125.351 *et seq.* (Stat Ann 1958 Rev § 5.2973[1] *et seq.*).

[2] CL 1948, § 125.581 *et seq.* (Stat Ann 1958 Rev § 5.2931 *et seq.*)

tion, judicially, the administrative whipsawing of any selected utility taxpayer by 2 agencies of one government, one ordering that it proceed as the other penalizes it for doing so." *Detroit Edison Company* v. *Corporation & Securities Commission* (1962), 367 Mich 104, 110.

The paramount interest of the State should prevail.

"The statutory right of a public utility to maintain facilities within a locality may not be contravened by a zoning ordinance. Where a utility is required by statute to furnish adequate service and facilities, a zoning ordinance may not properly prevent the building of structures designed to carry out the statutory mandate." 101 CJS, Zoning, § 10, p 693.

In a Pennsylvania case involving a somewhat analagous situation, the court held:

"It is clear that the proposed transmission line is necessary for the rendition of efficient service to the public and that that necessity transcends the legitimate objectives of any one of the political subdivisions of the commonwealth. * * *

"Local authorities not only are ill-equipped to comprehend the needs of the public beyond their jurisdiction, but, and equally important, those authorities, if they had the power to regulate, necessarily would exercise that power with an eye toward the local situation and not with the best interest of the public at large as the point of reference." *Duquesne Light Company* v. *Upper St. Clair Township* (1954), 377 Pa 323, 335, 336 (105 A2d 287, 293).

"A public utility under the regulatory powers of the public service commission and acting as an agency of the State in its exercise of the right of eminent domain may not be regulated by a municipality or a county when the utility is serving the larger interest of the general public, the local reg-

ulation being inimical to that larger interest."
(Syllabus.)

"It was to relieve public utilities from the burden
of local regulation that the legislature created the
public service commission.  *  *  *  When local
regulation attempts to control an activity in which
the whole state or a large segment thereof is inter-
ested, local regulation must fall." *Graham Farms,
Inc.* v. *Indianapolis Power & Light Company* (1968),
— Ind — (233 NE2d 656, 666).

The legislative grant to the Michigan public serv-
ice commission of authority to regulate public util-
ities has pre-empted that field so as to exclude local
legislation. The adopted ordinances, so far as they
pertain to this matter, are unreasonable.

I would affirm the judgment of the trial court.