### DETROIT EDISON COMPANY *v.* STATE.

COURTS—COURT OF CLAIMS—JURISDICTION—CORPORATIONS—ANNUAL
PRIVILEGE FEE—PAYMENT UNDER PROTEST.

> The court of claims has jurisdiction to determine claim against
> State by corporation for alleged overpayment of annual priv-
> ilege fee, paid under protest, where corporation and securities
> commission had rescinded its redetermination of such fee,
> withheld repayment of the payment, declined to proceed with
> redetermination as provided by statute thereby preventing
> completion of the administrative process as to such tax, and
> declined to give the corporation an unqualified certificate of
> good standing, essential to financing operations (CLS 1956,
> §§ 450.82, 450.304, 450.305, 450.309, 450.310).

Appeal from the Court of Claims; Smith (Richard
G.), J., presiding. Submitted June 8, 1960. (Docket
No. 21, Calendar No. 48,506.) Decided September
16, 1960.

The Detroit Edison Company, a New York cor-
poration, filed claim against the State of Michigan
and the Michigan Corporation and Securities Com-
mission for refund of 1958 annual corporate fran-
chise fee paid under protest. Claim dismissed on
motion. Plaintiff appeals. Reversed and remanded
for trial.

---

REFERENCES FOR POINTS IN HEADNOTES
42 Am Jur, Public Administrative Law § 200.

*Fischer, Sprague, Franklin & Ford (Harvey A. Fischer* and *Gerald C. Simon,* of counsel), for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *T. Carl Holbrook* and *William D. Dexter,* Assistants Attorney General, for defendants.

BLACK, J.  This case was duly assigned to the writer at the beginning of our present June term.  In pursuance of such assignment the following opinion is submitted to members of the Court this 22d day of July, 1960.

We split in this case for and against a doctrine that the law implies and so exacts an actionable promise of the State to repay that which it has wrongfully taken by the bludgeon of coercion.  If such promise is implied, and I hold that it is whether the unwilling promisee happens to be person, corporation, municipal unit, or the State itself, then it is visibly actionable at plaintiff's present suit under the simple and inclusive language of the court of claims act.\*

A scant year ago 5 members of this Court voted (*Spoon-Shacket Company, Inc.,* v. *County of Oakland,* 356 Mich 151) to adopt the then unanswered and now unanswerable reasoning of Mr. Justice SMITH which, in carefully assembled detail, the reader will find in the respective dissenting opinions of *Janiszewski* v. *Behrmann,* 345 Mich 8, 10–32, and *Consumers Power Company* v. *County of Muskegon,* 346 Mich 243, 251–266.  Repeating now my allegiance therewith in the form of a text-beginning, I submit as

---

\* The court of claims act grants unqualified "power and jurisdiction," to the court of claims, "to hear and determine *all* claims and demands, liquidated or unliquidated, *ex contractu* and *ex delicto,* against the State and any of its departments, commissions, boards, institutions, arms or agencies."  CL 1948, § 691.108 (Stat Ann 1959 Cum Supp § 27.3548[8]).

follows respective and indicated quotations from the
2 opinions:

"I find nothing in the Constitution or the statute
law of this State forbidding a governmental unit
from exercising ordinary principles of common
honesty.* Until such appears I shall conclude that
this Court is as free to uphold such principles by its
decrees and judgments as was Lord Mansfield when
he said (in *Moses* v. *Macferlan,* 2 Burr 1005, 1008
[97 Eng Rep 676]) that 'if the defendant be under an
obligation, from the ties of natural justice, to refund;
the law implies a debt, and gives this action, founded
in the equity of the plaintiff's case, as it were upon
a contract.' " *Consumers Power Company* v. *County
of Muskegon,* dissent, 346 Mich 243, 257.

"Excesses of governmental power, abuses of gov-
ernmental authority, are not new to mankind and we
are neither speechless nor helpless with respect
thereto without statute. It is precisely in this sit-
uation, where the citizen stands before us opposed by
all the panoply of power, that we are most acutely
conscious of our historic function. It is my opinion
that under existing Michigan law we require no legis-
lative authority to order the restitution of moneys
paid to and received by the taxing authorities
through mutual mistake of fact." Same case, p 260.

"Having such an involuntary payment, our law,
also, is clear that recovery thereof may be had. It
was a quarter of a century ago that we held in
*Blanchard* v. *City of Detroit,* 253 Mich 491, 495, that:
" 'If payment of a tax is involuntary, in the ab-
sence of statutory provision to the contrary, it may
be recovered, although there is no express statutory
provision therefor.
" 'It is a well-settled rule that "money got through
imposition" may be recovered back; and, as this

---

* Yes, as this Court said in *Hilt* v. *Weber,* 252 Mich 198, 224 (71
ALR 1238), and *School District No. 8 of the Township of Ecorse* v.
*State Land Office Board,* 313 Mich 560, 567, "The State must be
honest."

Court has said on several occasions, "the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation." *Ward* v. *Love County*, 253 US 17 (40 S Ct 419, 64 L ed 751), citing cases.'" Same case, p 261.*

"It is the law which is quick to fasten the yoke of contract on the wrongdoer. It is law which makes the implication of the promise. The wrongdoer is asserting to all who will listen that he made no contract, that the idea of contract never entered his head, that what he was doing was strong-arming this plaintiff, reducing his goods and chattels to possession, converting his property. We nod. That, we say, is precisely why we imply the promise." *Janiszewski* v. *Behrmann*, 345 Mich 8, 31.

---

* This case of *Ward* v. *Love County*, unearthed and applied as it was in *Blanchard* and again in *Consumers*, is a dependable guide to proper decision here. If exactions paid under a mistake of fact beget an implied promise, certainly amounts "obtained by coercive means—by compulsion," do likewise.

In *Ward*, similarly on demurrer to the taken-as-true petition, it was shown that the sums sued for by claimants had been "coercively collected from them by Love county, Oklahoma, as taxes on their allotments." The supreme court found—on this pleaded showing—that claimants had paid the sums in question under threat of losing their lands in event of nonpayment; also that they had (p 23) "yielded to the county's demand and paid the taxes, protesting and objecting at the time that the same were illegal." Holding (p 24) that the sums thus collected were obtained by coercion and "compulsion," the court said (as quoted partly in *Blanchard*):

"As the payment was not voluntary, but made under compulsion, no statutory authority was essential to enable or require the county to refund the money. It is a well-settled rule that 'money got through imposition' may be recovered back; and, as this court has said on several occasions, 'the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' *Marsh* v. *Fulton County*, 10 Wall (77 US) 676, 684 (19 L ed 1040); *City of Louisiana* v. *Wood*, 102 US 294, 298, 299 (26 L ed 153); *Chapman* v. *County of Douglas*, 107 US 348, 355 (2 S Ct 62, 27 L ed 378). To say that the county could collect these unlawful taxes by coercive means and not incur any obligation to pay them back is nothing short of saying that it could take or appropriate the property of these Indian allottees arbitrarily and without due process of law."

Unless, by judicial fiat, it is to make a decisive difference that this plaintiff happens to be the Detroit Edison Company, represented by the firm of Fischer, Sprague, Franklin & Ford, instead of Consumers Power Company, represented as it was by the firm of Sessions & Barlow; or unless our majority is to make *Consumers*—enlivened as it was in *Spoon-Shacket*—distinguishable by pointing out that the defendants in both cases were counties of Michigan rather than the State of Michigan, then the outright and exclusive jurisdiction of the court of claims to hear and decide the presented merits of plaintiff's claim should be upheld without further vomitus of pages and pages of quibbling words. We are not supposed to live, as Justice SMITH observed in *Consumers* (p 256), under a double standard of morality, whereby that which is an abomination when committed by a private citizen is approved with unction when accomplished by the State; a State which, as in the case of any similarly charged defendant standing at the bar of a circuit court, is by statute made directly accountable *ex contractu* in the special court whose judgment we now review.

The facts of this case are of written record. By demurring to plaintiff's statement of claim defendants have automatically stipulated that the court below and this Court in turn may and should test their demurrer by accepting such written record at face value. Pursuing such stipulation, I relate the substance of that record as follows:

According to the requirements of CLS 1956, §§ 450-.82, 450.304, 450.305 (Stat Ann 1959 Cum Supp §§ 21.82, 21.205, 21.208), plaintiff Detroit Edison Company calculated and paid, with its timely annual report of 1958 to the defendant commission, the Company's annual privilege fee in the sum of $1,353,695-.51 (the amount includes a filing fee of $2.00). October 20, 1958, the commission formally notified the

Company of its computation and determination of such fee in the amount of $1,473,481.40 (including the filing fee). By its letter of notification the commission called on the Company to pay the computed deficiency in the sum of $119,785.89.

Refer now to CLS 1956, §§ 450.309, 450.310 (Stat Ann 1959 Cum Supp §§ 21.210, 21.210[1]). The Company immediately applied for a statutory redetermination of the amount of such fee, thus invoking statutory duty of the commission to *"promptly* redetermine the liability of such corporation."

December 10, 1958, the commission notified the Company that it had redetermined the fee in question by reducing its previous determination of the amount to $1,472,824.76, leaving a net redetermined amount owing in the sum of $119,129.25. December 30, 1958, the Company paid such additional sum of $119,129.25 "involuntarily and under protest so that the commission will issue a certificate of good standing to the Detroit Edison Company upon request." At the same time the company notified the commission of its intent to sue in the court of claims for refund of the amount so paid under protest.

The present suit was instituted in the court of claims January 23, 1959. The gut-basis of the suit is the brief-admitted fact that "The plaintiff was forced to pay the disputed fee so that it could secure a certificate of good standing from the defendant commission upon request in connection with its financing."

The next event in the course of developing controversy was a decision of the defendant commission to "rescind" its aforesaid redetermination of the amount of such fee. This was accomplished by a letter dated February 4, 1959, addressed to Detroit Edison Company by the defendant commission, reading as follows:

"Upon reviewing your file to date including your petition for redetermination of your 1958 privilege fee dated November 10, 1958, and our reply of December 10, 1958, we find and determine that we were and are in error in making the redetermination set forth in our letter of December 10, 1958.

"The letter of December 10th was sent out inadvertently by the director of annual reports. It is not the policy of this commission to issue redeterminations on controversial questions currently pending in some appellate body whose determination would resolve the controversy and would be binding on the parties concerned.

"Inasmuch as the same questions that are in controversy over your 1958 franchise fee are also in controversy in an appeal pending before the corporation tax appeal board involving your 1956 annual franchise fee (*Detroit Edison Company* v. *Corporation and Securities Commission*, Docket No. 57–3),* we hereby rescind our letter of redetermination of December 10, 1958, and hold the question of redetermination of your 1958 fee in abeyance until the above-referred-to case is finally adjudicated.

"Unless otherwise advised by you, we will hold the moneys paid for your 1958 franchise privilege fee over and above the amount you claim to be properly due, as a credit for any further franchise fees which may be owed by you for past, current or future years. In the application of any interest and penalties on unpaid amounts, this credit will be treated as an amount paid at the date it was received by the commission."

Two days later the defendant State and the defendant commission moved to dismiss plaintiff's statement of claim, pertinently assigning reasons as follows:

"1. That the court of claims does not have jurisdiction to hear appeals in reference to determinations

---

* See 361 Mich 150.—REPORTER.

and redeterminations of corporate franchise privilege fee matters, which jurisdiction is lodged exclusively in the corporation tax appeal board pursuant to PA 1921, No 85, as amended."

"4. That the redetermination of the corporation and securities commission of plaintiff's 1958 annual franchise privilege fee, dated October 20, 1958, giving rise to the alleged 'claim' in the amount of $119,785.89, has been rescinded and held at naught by the Michigan corporation and securities commission, until final adjudication of Detroit Edison Company, *supra*, before the corporation tax appeal board, which would dispose of this matter."

"5. That a copy of the letter rescinding the redetermination and setting it aside, dated Feburary 4, 1959, from the Michigan corporation and securities commission to the Detroit Edison Company, is appended hereto and made a part of this motion to dismiss."

The motion to dismiss was noticed for submission before the court 2 months later (April 8, 1959). February 12, 1959, plaintiff filed motion to advance the date of hearing of the aforesaid motion to dismiss. February 23, 1959, the defendants countered with a motion "to hold in abeyance any further action in this cause until adjudication of the appeal of the Detroit Edison Company before the corporation tax appeal board," alleging that the present suit was "premature because the defendant Michigan corporation and securities commission * * * has specifically held in abeyance, by its letter of February 4, 1959, any final disposition of plaintiff's request for redetermination of plaintiff's 1958 franchise privilege fee," and alleging further that plaintiff's suit was "premature because plaintiff has not exhausted its administrative remedies as set forth in sections 9 and 10" (referring here to above cited CLS 1956, §§ 450.309, and 450.310 [Stat Ann 1959 Cum Supp §§ 21.210, 21.210(1)]).

March 27, 1959, the then-seated judge of the court of claims heard the parties and entered the following order:

"A motion by defendants having been filed and brought on to be heard to hold the above cause in abeyance pending a redetermination of 1958 franchise fees by the Michigan corporation and securities commission, and arguments being heard and briefs submitted, and the court being fully advised in the premises.

"It is hereby ordered, that the motion of plaintiff-petitioner to advance for early hearing the defendant's motion to dismiss this cause, is hereby denied; and

"It is hereby ordered, that the effect of the commissioner's letter of February 4, 1959, was to rescind the redetermination of December 10, 1958, and that there has been no redetermination of plaintiff-petitioner's 1958 franchise privilege fee; and

"It is ordered, that the motion of the Michigan corporation and securities commission to hold the above cause in abeyance until after a redetermination of the 1958 franchise fee has been made by the Michigan corporation and securities commission, is hereby granted, provided, and it is further ordered, that defendant is not to withhold the issuance of a certificate of good standing the same as the 1957 certificate dated 8/13/57 to the plaintiff-petitioner because of the status of the 1958 franchise fee of the plaintiff-petitioner *so long as this cause is held in abeyance*, but defendant shall grant the same as though the 1958 franchise fee had been finally determined and paid."

April 1, 1959, plaintiff wrote the defendant commission demanding (per the order of March 27, 1959) issuance to it "of a certificate of good standing"; also that the mentioned sum of $119,129.25 be returned to it. April 21, 1959, the commission wrote plaintiff's counsel its refusal to comply with the aforesaid

demand, reciting that "It is the position of this commission that you are entitled to a certificate of good standing so long as there has been no redetermination made by the commission *and so long as the court matter is held in abeyance.*" The commission's letter, declaring its firm position in such regard, appears (appendix "A") at the end of this opinion.

May 28, 1959, plaintiff applied to this Court for leave to appeal from the aforesaid order of March 27, 1959, also from a subsequent order of the same court dated May 13, 1959, by which last order the then-seated judge denied plaintiff a rehearing of the March 27th order. As a result of such application we entered (July 13, 1959) the following order:

"In this cause an application is filed by plaintiff for leave to appeal from an order of the court of claims, and an answer thereto having been filed by defendants, and due consideration thereof having been had by the court, it is ordered that the order of the court of claims dated March 27, 1959, be set aside and that the cause be remanded to the court for prompt hearing and determination of defendants' pending motion to dismiss. The court of claims may, either on such motion to dismiss or trial of the merits, determine the question whether the defendant corporation and securities commission became authorized after commencement of this suit to rescind or otherwise recall the redetermination of December 10, 1958."

While such application for leave to appeal was pending, the defendant commission voluntarily sent plaintiff a qualified certificate, the nature of which may be seen by comparison thereof with the regular form of certificate as issued by the commission. For such comparison see appendix "B."

Circuit Judge Smith, assigned meanwhile to the court of claims, proceeded promptly to carry out our quoted order of July 13th. He held, following due

hearing, that "The court of claims has no jurisdiction to hear this matter since the legislature has in fact created an exclusive remedy for taxpayers who seek review of the commission's redetermination." From an ensuing order granting defendants' said motion to dismiss, plaintiff has appealed.

Defendants' motion to dismiss is groundless—utterly. The court of claims has jurisdiction as against their allegation that plaintiff has an administrative remedy, there having been no "redetermination" plaintiff might have or might now review.[*] The commission hastily repudiated (after plaintiff had paid under protest) its letter of December 10, 1958. It has since refused, upon announced intent of holding the question of redetermination "in abeyance," to proceed with its statutory duty of "prompt" action. Meanwhile, wielding an administratively-spiked club over the head of the plaintiff taxpayer, it withholds the unqualified certificate to which such taxpayer—so far at least—is lawfully entitled. With all this, it continues to retain the sum which on the face of these pleaded documents was coerced from plaintiff.

The commission's letter, sent plaintiff after the latter had applied for leave to appeal (refer again to appendix "A"), tells the whole story of abuse of administrative authority; of determination to employ the administrative process as a means of denial of due process; of design to force this taxpayer to pay—without final disposition of tortoise-pending administrative proceedings—a disputed sum on penalty of having its necessary financing crippled; of "holding in abeyance" such taxpayer's fair appeal for relief to a jurisdictionally-appointed court.

---

[*] This is the precise position of the commission. Commissioner Gubow affirmed, by affidavit attached to the commission's subsequent motion "to hold in abeyance," that "he has not made any final recomputation and redetermination of plaintiff's 1958 franchise privilege fee."

Even a giant utility corporation, treated this way by the public authority, is no less than a similarly treated widow or orphan entitled on application to judicial relief. This plaintiff in fact happens to be one of the "Samaritans of Michigan" to which we made reference in *Spoon-Shacket, supra.** See Senate resolution No. 20 (Senate Journal, regular session 1959, pp 106, 107; February 5, 1959), commending industry of Michigan for its advance payment of taxes for the relief of Michigan, and the governor's news release of February 20, 1959 (reported Lansing State Journal), praising "the 'wonderful response' of 35 business taxpayers whose $32,000,000 in early tax payments eased the State's cash crisis."

When any like corporation abuses its power (say by application of "the corporate hammerlock") and so is shown guilty of oppression, I have not hesitated to say so (*Peaden* v. *Employment Security Comm.*, 355 Mich 613, 616, 619, 630, 631). When the State's half-nelson is applied to such a corporation without shred of justification, I am, if the law permits, equally on the side of the oppressed. Here the law—shaped by the court of claims act—does permit, and so I vote to reverse. It is no more than "State-minded" nonsense to suggest that this plaintiff, proceeding as it may only do in the court of claims, has no right to invoke justiciably an implied promise of

---

* "Consider for a moment that Michigan's major taxpayers (in other areas of levy) have been asked and doubtless will be asked to assist, by premature payment, in meeting the State's now chronic financial crises. Necessarily these payments have been made and must be made on the basis of estimates and ahead-of-time calculations. Such practice, inherently, is fruitful of honest and before-the-fact error. Now, in this very year of urgent concern, our divided court again leaves the Samaritans of Michigan in doubt upon the question whether they may receive relief, in the courts, in event they ultimately discover overpayment on their part. What would we do should Ford Motor or General Motors overpay, say, $500,000, followed by righteous appeal on their part for judicial relief? Ah, there is a piquant question. Would that it were here, for decision in a companion case." *Spoon-Shacket Company, Inc.*, v. *County of Oakland*, 356 Mich 151, 167.

the State to repay that which the State coerced from it on December 30, 1958.

SOURIS, J., concurred with BLACK, J.

APPENDIX "A"

STATE OF MICHIGAN

MICHIGAN CORPORATION AND SECURITIES COMMISSION

LANSING

April 21, 1959

Lawrence Gubow
Commissioner

Fischer, Sprague, Franklin & Ford
Attorneys at Law
1100 Dime Building
Detroit 26, Michigan

> Attn: Mr. Gerald C. Simon
> Re: The Detroit Edison Company

*Gentlemen:*

This will acknowledge receipt of your letter dated April 1, 1959, in which you request the return of $119,129.25, together with interest at the rate of 5% per annum from the date of our receipt of payment to the time of returning said moneys. You also request, in behalf of the Detroit Edison Company, a certificate of good standing without exception, dated the day following the return of the above moneys.

Please be advised that we have taken the subject matter of your letter under advisement and conclude that both of the requests you make in such letter cannot be granted. It is not the policy of this office to issue the certificate of good standing in the form you have requested until there has been a formal ac-

ceptance of all prior annual reports to this commission, which includes a final determination of all fees due with these reports.

It is recognized that this general rule of the commission has been modified by the proceedings you have commenced in the court of claims involving the proper determination of your 1958 franchise privilege fees, and by said court order in that matter dated March 27, 1959.

Under this order, it is the position of this commission that you are entitled to a certificate of good standing so long as there has been no redetermination made by the commission and so long as the court matter is held in abeyance. This means that the issuance of the certificate of good standing without exception is conditioned upon your not taking any further proceedings in the court of claims, including not filing any motion for rehearing, and upon your not taking any further steps in regard to the redetermination of your 1958 franchise privilege fee before the corporation and securities commission, including demanding the refund of the amounts referred to in my letter of February 4, 1959.

If you had not requested the refund of the amount of money paid in regard to your 1958 franchise privilege fee, and if you had not requested a rehearing in the court of claims matter, this commission would issue a certificate of good standing without exception pursuant to the court of claims order of March 27, 1959. For the reasons stated above, however, it is not possible for this commission to grant the requests as made in your letter of March 27, 1959.

We realize that in accordance with our letter of Feburary 4, 1959, you are entitled to a refund of the $119,129.25 requested and that pursuant to the aforesaid court of claims order dated March 27, 1959, you are entitled to a certificate of good standing so long

as all proceedings in regard to your 1958 franchise privilege fee are held in abeyance. However, we also realize that you are not entitled to both.

Please find enclosed your check for $3.00 for the issuance of a certificate of good standing.

Very truly yours,

/s/ LAWRENCE GUBOW

Lawrence Gubow

Commissioner

LG:pl

Enc.

cc:     Mr. A. G. Maihofer, Secretary
        The Detroit Edison Company
        W. D. Dexter
        Annual Reports Division


APPENDIX "B"

The regular certificate of corporate good standing is issued by means of a formal certificate, carrying the great seal of the State above the heading "Michigan Corporation and Securities Commission." The form is addressed "To all to whom these presents shall come." It bears the date of execution and the signature of the commissioner together with the seal of the commission.

Such regular certificate, as last issued to Detroit Edison Company under date of August 13, 1957, reads as follows:

"The Detroit Edison Company, a New York corporation, was admitted to do business in this State on January 29, 1903. The corporation has filed all annual reports, paid the fees in connection therewith, is in good standing in this office and is duly authorized to transact business in Michigan. This certificate is in due form and made by me as the proper officer and is entitled to have full faith and credit

given it in every court and office within the United States."

The qualified certificate, which the commission issued after filing of the Company's application (of May 28, 1959) for leave to appeal, is dated June 15, 1959. It reads:

"The Detroit Edison Company, a New York corporation, was admitted to do business in this State on January 29, 1903. The corporation has filed all annual reports, paid the fees in connection therewith determined to be due as of this date, is in good standing in this office, and is duly authorized to transact business in Michigan.

"This certificate is in due form and made by me as the proper officer, is issued without prejudice to the commission to determine or redetermine additional fees for the current or prior years, and is entitled to have full faith and credit given it in every court and office within the United States."

CARR, J. (*concurring*). This case involves a dispute between the plaintiff and the defendant commission with reference to the amount of the annual corporate franchise fee for 1958 for which the plaintiff was liable. It is the claim of plaintiff that it filed its annual report with the defendant commission on May 13, 1958, and at that time paid a fee in the sum of $1,353,695.51. Subsequently it was notified that such amount was insufficient, and that the additional sum of $119,785.89 was owing. The latter amount was thereafter reduced by the sum of $656.64, and plaintiff paid under protest on December 30, 1958.

Following such payment plaintiff instituted the present action in the court of claims to recover the amount paid, alleging that said sum was unlawfully exacted from it, that it made the payment in order to secure a certificate of good standing from the defendant commission which it needed for use in con-

nection with certain contemplated financing operations, and that at the time of the payment under protest the commission was advised that suit for recovery would be brought.

On behalf of defendants motion was filed to dismiss the case for lack of jurisdiction, it being further asserted that a like question of liability was pending in another proceeding before the corporation tax appeal board, and that the redetermination order of the commission wherein the reduction above referred to was made had been set aside. It appears that the attempt to rescind such order was made after the instant case was instituted.

The motion to dismiss was granted on the ground that the court of claims was without jurisdiction to hear and determine the matter. It was the opinion of the presiding judge that under PA 1921, No 85*, as amended by PA 1954, No 153 (CLS 1956, §§ 450-.309, 450.310 [Stat Ann 1959 Cum Supp §§ 21.210, 21.210(1)]), plaintiff was limited to the remedies allowed by the procedure therein set forth. The specific sections cited provide for notice to a corporation subject to the provisions of the act as to the amount of its franchise fee liability, with the right to ask for a redetermination thereof by the commission within a period of 20 days after receipt of such notice. Review by an appeal board composed of the attorney general, the State treasurer, and the auditor general, may be claimed by either the commission or the corporation, with subsequent review by this Court. The amendments made further permitted a demand for a refund on the part of a corporation for an excessive payment made by it for franchise fee liability with the right of review by the appeal board and subsequently by this Court. Such methods of procedure were indicated to be

---

* CL 1948, § 450.301 *et seq.*, as amended (Stat Ann § 21.201 *et seq.*, as amended).

independent, it apparently being the intention of the legislature that either or both might be followed.

It is significant that the legislature did not specify that the remedies to a corporation, thereby afforded, would be exclusive. In view of the decision of this Court in *In re Consolidated Freight Co.*, 265 Mich 340, 348 (4 PUR NS 397), it may be assumed that the legislature intended that the review in this Court should be confined wholly to questions of law, in other words, an appeal in the nature of certiorari. If, therefore, the statutory procedure under the 1954 act, above cited, is exclusive, a corporation considering itself aggrieved by being required to pay the amount of the franchise fee as fixed by the commission has no remedy by which factual issues can be tried in court. Such result is not consistent with the provision of the general property tax law (CL 1948, § 211.53 [Stat Ann 1950 Rev § 7.97]) allowing the payment of taxes under protest, with the right to sue to recover such payments.

Had it been the intention of the legislature in the enactment of PA 1954, No 153, to deprive corporations of the right recognized in *Consumers Power Company* v. *Corporation & Securities Commission*, 326 Mich 643 (16 ALR2d 1084), to bring action in the court of claims to recover a franchise fee paid under protest, we think such intent would have been clearly expressed. The administrative procedures as provided in said amendatory act are not inconsistent with the right to sue in the court of claims, the review of such procedure being limited to questions of law only. The implied abrogation of a right analogous to that granted by the general property tax law to taxpayers may not be assumed. An intent to abolish a cause of action previously allowed to a given class must be clearly expressed. Such is the legislative policy in this State as evidenced by the workmen's compensation act and other statutes abolishing cer-

tain actions. We concur in reversal of the case and its remand to the court of claims for trial.

The sole question before us at the present time being jurisdictional in nature, any consideration of the controversy on its merits is not required. Issues of such character must necessarily be determined first in the trial court. It may be noted, however, that it is plaintiff's claim here that it paid the tax that it now seeks to recover *under protest,* and that it was, as a matter of fact, compelled to do so for the reason above indicated. The case presents questions not involved in *Consumers Power Company* v. *County of Muskegon,* 346 Mich 243, and *Spoon-Shacket Company, Inc.,* v. *County of Oakland,* 356 Mich 151, in each of which the tax for which suit was brought to recover was not paid under protest and under alleged duress or coercion of any kind, but solely for other reasons.

Reversed and remanded for trial.

DETHMERS, C. J., and KELLY, J., concurred with CARR, J.

EDWARDS, J. (*concurring*). On this record I concur with Mr. Justice BLACK that the court of claims had jurisdiction and that it should have proceeded to hearing of the claim on the merits since plaintiff's normal administrative remedy had been barred by the refusal of the commission to issue the redetermination called for by the statute.

The basic issue underlying this litigation is dealt with on the merits in my opinion in *Detroit Edison Co.* v. *Michigan Corporation & Securities Commission,* 361 Mich 150.

SMITH, J., concurred with EDWARDS, J.

KAVANAGH, J., did not sit.