CORPORATION & SECURITIES COMMISSION *v.* AMERICAN
MOTORS CORPORATION.

APPEAL *re* DETROIT EDISON COMPANY.

OPINION OF THE COURT.

1. JUDGMENT—ESTOPPEL BY JUDGMENT—MATTERS DETERMINED.

A judgment in an action between 2 parties is conclusive as to
the entire matter involved, that is, as to the case presented, and
not simply as to the particular question in regard to which the
parties are in controversy, so that in a subsequent action be-
tween the same parties where the causes of action are the
same, the judgment in the prior action is conclusive as to
every matter of law or fact involved in the claim whether ar-
gued or not.

2. SAME—PRIOR JUDGMENT—ESTOPPEL—ANNUAL FRANCHISE FEE.

Decision and judgment in prior case between corporate taxpayer
and corporation and securities commission that "reserve for
deferred Federal income taxes" is not includible in corporate
taxpayer's surplus for the purpose of computing its annual
franchise fee *held,* binding precedent as to that issue in subse-
quent litigation between the same parties over computation
of the annual franchise fee for different years than those in-
volved in prior determination (PA 1921, No 85, § 4, as last
amended by PA 1963, No 63).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 30A Am Jur, Judgments §§ 324–327, 363, 371, 372.
[3] 41 Am Jur, Pleading §§ 340–342.
[4, 10] 20 Am Jur 2d, Costs §§ 10, 14.
[5] 7 Am Jur 2d, Attorney General § 7.
[6, 9] 30A Am Jur, Judgments §§ 336, 337, 340, 341.
[7] 30A Am Jur, Judgments §§ 324–327, 336, 337, 340, 341, 363,
371, 372.
[8] 5 Am Jur 2d, Appeal and Error § 934.

3. SAME—SUMMARY JUDGMENT—PRIOR ADJUDICATION—RESERVE FOR DEFERRED FEDERAL INCOME TAXES.

Summary judgment in favor of defendant taxpayer in action by corporation and securities commission for declaratory judgment as to proper accounting method for handling "reserve for deferred Federal income taxes", *held*, properly granted in case where defendant corporate taxpayer had prevailed in prior litigation where the issue of method of handling such reserve was the same, but tax was for a different year.

4. COSTS—RES JUDICATA.

Costs in circuit court, Court of Appeals, and Supreme Court are ordered paid to appellee taxpayer which had been subjected to litigation on issues decided in previous cases.

SEPARATE OPINION.

BLACK, J.

5. ATTORNEY GENERAL—ADMINISTRATIVE LAW AND PROCEDURE—CORPORATION AND SECURITIES COMMISSION—TAXATION—REDETERMINATION OF CORPORATE FRANCHISE FEE.

*No attorney general is either duty bound or possessed of legal or moral right to suspend for years a statutory command that the corporation and securities commission give prompt consideration to the timely written request of a corporate taxpayer for redetermination of its timely paid annual franchise fee and to redetermine that fee promptly (PA 1921, No 85, § 4, as last amended by PA 1963, No 63; CLS 1956, §§ 450-.309, 450.310).*

6. APPEAL AND ERROR—AFFIRMANCE—JUDGMENT—EFFECT.

*Judgment rendered in the court of claims against the State and in favor of corporate taxpayer for refund of overpayment of corporation franchise fee, and not the order of affirmance entered by the Supreme Court upon appeal, is the operative judgment upon which an estoppel by adjudication against the State and in favor of the corporate taxpayer stands.*

7. JUDGMENT—ESTOPPEL BY JUDGMENT—MATTERS AND PARTIES CONCLUDED.

*Points of law decided by judge in court of claims bind the parties to his judgment, and they are not free to relitigate such points of law anew, where his judgment was affirmed by the Supreme Court, by a vote of 3 to 2, with one of the Justices voting to affirm without opinion.*

8. APPEAL AND ERROR—AFFIRMANCE—SUPREME COURT—EFFECT.

*Affirmance by the Supreme Court of a judgment of the court of claims, decided by a vote of 3 Justices in favor of affirmance and 2 opposed, with 3 not participating, is nonetheless a decision of the court, and not simply a decision of the Justices voting to affirm.*

9. JUDGMENT—QUESTION DETERMINED.

*Opinion and judgment of court of claims, affirmed by Supreme Court, that corporation and securities commission is bound by an accounting procedure set up by public service commission with respect to public utility corporation taxpayer, in determining the annual franchise fee of such taxpayer, is binding both on the taxpayer and on the State until the statutory law or administrative orders upon which such decision was based should come to alteration or repeal.*

10. COSTS—RES JUDICATA—PUBLIC QUESTION.

*Costs in circuit court, Court of Appeals, and Supreme Court are ordered paid to appellee taxpayer which had been subjected to litigation on issues decided in previous case, no public question being involved.*

Appeal from Court of Appeals, Division 1; J. H. Gillis, P. J., and Holbrook and McGregor, JJ., affirming Ingham, Coash (Louis E.), J. Submitted June 8, 1967. (Calendar No. 12, Docket No. 51,612.). Decided October 2, 1967.

4 Mich App 65, affirmed.

Complaint by Corporation & Securities Commission, and its commissioner, Lenton G. Sculthorp, against American Motors Corporation, a Maryland corporation, Detroit Edison Company, a New York corporation, and other corporations, for a declaratory judgment as to the proper accounting treatment of balance sheet item captioned "reserve for Federal income taxes". Summary judgment for defendant Detroit Edison Company. Plaintiffs appealed to Court of Appeals. Affirmed. Plaintiffs appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *T. Carl Holbrook* and *William D. Dexter,* Assistants Attorney General, for plaintiffs.

*Fischer, Sprague, Franklin & Ford (Harvey A. Fischer, Gerald C. Simon,* and *Francis E. Bentley,* of counsel), for defendant Detroit Edison Company.

O'HARA, J. Leave was granted in this case to appeal an order of the Court of Appeals.[1] The order affirmed the grant of summary judgment in the Ingham county circuit court. We affirm.

The litigation is in the nature of a suit for declaratory judgment against some 13 defendants. The plaintiff-appellant is the commissioner of the corporation and securities commission. Thirteen corporations were named as defendants. Decision in this case is limited to Detroit Edison Company, appellee herein.

Appellee's legal posture is distinguishable from the other named defendants in that it is a public utility and thus subject to accounting procedures prescribed by the Michigan public service commission. It is further distinguishable by reason of prior litigation which reached this Court and was decided by a 3-2 vote, 3 Justices not participating.

The subject matter of this suit is the annual franchise fee of appellee corporation for the years 1957, and 1959 through 1966, both inclusive. The franchise fee for 1958 was the vehicle for the determination of appellee's legal rights in the prior action. The question here presented is the extent to which the decision of this Court in *Detroit Edison Com-*

---

[1] *Corporation & Securities Commission* v. *American Motors Corporation (Appeal re Detroit Edison Company),* 4 Mich App 65.—RE-PORTER.

*pany* v. *Corporation & Securities Commission,* 367 Mich 104, renders the issues in the suit against 13 corporations instituted February 10, 1964, *res judicata* as to this defendant-appellee.

It is of little worth to bench and bar to recite again a long and detailed factual background. In simple substance, the issue is whether amounts designated "reserve for deferred Federal income taxes" can be included in this corporation's "surplus" for the computation of its annual franchise fee. The fee is computed by multiplying the corporation's paid-up capital and surplus by the statutory[2] millage rate (at the time involved in the prior case, 4 mills).

Originally, appellee included the reserve item above mentioned in its surplus. The Michigan public service commission by an order which is set out in the Court of Appeals opinion,[3] provided in part:

" 'The current Federal income tax reductions of the Detroit Edison Company resulting from such special amortization are subject to liability for the larger future Federal income taxes * * * and are *not* available for addition to surplus.' " (Emphasis supplied.)

Obediently, appellee omitted the item from its "surplus." The corporation and securities commission, however, did not deem itself bound by this determination. It withheld the requisite authority of appellee to exercise its corporate rights and privileges in this State, for failure to include the reserve in surplus.

The Ingham county circuit court in granting the summary judgment followed the holding in *Detroit*

---

[2] PA 1921, No 85, § 4, as amended by PA 1954, No 144 (CLS 1956, § 450.304 [Stat Ann 1959 Cum Supp § 21.205]). Currently PA 1963, No 63, § 4 (Stat Ann 1965 Cum Supp § 21.205).
[3] 4 Mich App 65, 67.

*Edison Company* v. *Corporation & Securities Commission,* 367 Mich 104. The Court of Appeals affirmed.

We rest our decision in this case on the doctrine of estoppel by judgment. We quote with approval the statement and supporting authority therefor in the reply brief of appellee:

"It is the prior adjudication (judgment) between the same parties on this same question which binds the parties.

" '2 Freeman on Judgments (5th ed), § 708, pp 1494–1496, discusses this question as follows:

" ' "Estoppel includes both law and fact.—The estoppel of a judgment is not confined to matters purely of fact or of mixed law and fact, but extends to a decision of the legal rights of the parties on a state of facts common to both suits, although the causes of action are different. 'The claim that a mere conclusion of law announced by one court with reference to a matter before it is not binding in a subsequent suit between the same parties involving the same matter is plausible only under a superficial conception of the principle of *res judicata.* It is not the finding of facts which constitutes an adjudication, but it is the conclusion of the court as to the effect of those facts determined as matter of law. It is the determination of the issues presented which constitutes the adjudication. That determination may consist principally of findings of fact which lead to the result reached on rules of law which are not disputed as between the parties, or it may consist of conclusions as to disputed questions of law as applied to facts about which there is no controversy leading to the result announced. Every judgment necessarily involves the application of principles of law to the facts of the case. The dispute between the parties may be as to the facts, or as to the law, or as to both, but the judgment is conclusive as to the entire matter involved, that is, as to the case presented, and not simply as to the particular question

in regard to which the parties are in controversy.'
Where the causes of action are the same the judgment is conclusive as to every matter of law or fact
involved in the claim whether urged or not.

" ' "An adjudication in a proceeding appropriate
for that purpose, such as a taxpayer's suit, as to
the validity of municipal bonds, is conclusive that
the city has the legal right to incur a debt of the
amount and for the purpose indicated, that the assent of the qualified voters has been obtained as
required by law, and as to all other questions which
the constitution and laws require to be determined
before authority is conferred on a municipality to
incur a debt. So a judgment against a municipal
corporation and a writ of mandamus directing the
levy of a tax to satisfy it conclusively determines
that the levy is not in excess of the limits imposed
by statute." ' " (Citation and footnotes omitted.)

We would make abidingly clear that absent an
express overruling of *Detroit Edison Company* v.
*Corporation & Securities Commission, supra,* it is
binding precedent as to issue decided therein, namely, the reserve for deferred Federal income taxes is
not includible in *this* corporation's surplus for the
computation of its annual franchise fee. Nor should
it be necessary for appellee to seek our writ of superintending control to enforce the holding. We have
reviewed appellant's plethora of authority and the
rationale of his argument seeking to include appellee
within the ambit of whatever decision may ultimately result in the cases of other named defendants in
the instant suit and find it inapposite. As to any
other party individually or the balance of the parties collectively, we express no opinion.

The order of the Court of Appeals affirming the
order for summary judgment of the circuit court
for Ingham county is affirmed.

Under the circumstances of this case, appellee is authorized to tax the costs of all courts.

Dethmers, C. J., and Kelly, T. M. Kavanagh, Souris, Adams, and Brennan, JJ., concurred with O'Hara, J.

Black, J. (*concurring in affirmance*). "Administrative justice is the friend, not the enemy, of good administration. No class of people stands to benefit more in the long run from just administration than the administrators themselves, because the State is permeated from top to bottom with the truth that government depends upon the approval of the governed. Fair play in administration will enlist the citizen's sympathies and will enormously reduce the friction with which the machinery of government works. All good administrators should take care that the machinery is properly tended and that the lubricant of justice is supplied in the right quantity at the right points."[1]

This appeal brings up what should be the final chapter of another thoroughly Jarndyced chicane of the law. From the beginning that chicane has consisted of the calculated stalling and forestalling, by the arbitrary taker and purposeful keeper of property belonging to another, of the administrative and judicial process due such other. To its shame that taker, keeper and staller has been Michigan's corporation and securities commission, steered all these years by constitutional officers who seem not to have understood that the supreme assurance of due process (US Const, Ams 5, 14; Mich Const 1908, art 2, § 16; Mich Const 1963, art 1, § 17) applies to the deprivation of *property* as well as to *life* and *liberty;*

[1] Professor Wade's conclusion of the Cooley Lectures of 1961; "Towards Administrative Justice", Univ. of Mich. Press, 1963; p 129.

that no attorney general is either duty bound or possessed of legal or moral right to suspend for years a statutory command that the appointed statutory administrator (a) give "prompt" consideration to the timely written request of a corporate taxpayer for redetermination of its timely paid annual franchise fee and (b) "promptly redetermine" that fee, and that the injustice of justice delayed purposely is deserving of stern judicial censure no matter who the perpetrator or perpetrators thereof may be.

This Court's experience with what had already become a litigiously disgraceful vendetta goes back to January 7, 1960 and June 8, 1960, the respective dates of submission of *Detroit Edison Company* v. *Corporation & Securities Commission,* 361 Mich 150, and *Detroit Edison Company* v. *State,* 361 Mich 290. At issue here were the respective amounts of Detroit Edison's 1956 and 1958 corporate franchise fees.    Edison, claiming that the corporation and securities commission had forced it on each occasion to pay an excessive amount for the privilege of doing business in Michigan during each ensuing year, sought under sections 9 and 10 (CLS 1956, §§ 450.309, 450.310) administrative redeterminations of the respective exactions and statutory refund of what— as claimed by it—turned out to be grossly excessive levies.    The commission refused to redetermine as thus sought, giving as reasons that which appears in its "abeyance" letter to Edison of February 4, 1959.    This letter appears in full in the second *Edison Case* (361 Mich 290, 296).    It was followed by the attorney general's coincidant motion of February 23, 1959 "to hold in abeyance any further action in this cause [Edison's suit in the court of claims for judgment of refund] until adjudication of the appeal of the Detroit Edison Company before the

corporation tax appeal board."[2]  For the then details
of such unworthy business, see *Detroit Edison Com-
pany* v. *State,* 361 Mich 290, 294–302.  Suffice it to
say that two members of the Court, with no other
Justice taking pertinent issue, found it proper to
observe that far back (361 Mich at 300, 301):

"The commission's [corporation & securities com-
mission] letter, sent plaintiff [Detroit Edison Com-
pany] after the latter had applied for leave to appeal
(refer again to appendix 'A'), tells the whole story
of abuse of administrative authority; of determina-
tion to employ the administrative process as a means
of denial of due process; of design to force this tax-
payer to pay—without final disposition of tortoise-
pending administrative proceedings—a disputed
sum on penalty of having its necessary financing
crippled; of 'holding in abeyance' such taxpayer's
fair appeal for relief to a jurisdictionally-appointed
court.

"Even a giant utility corporation, treated this
way by the public authority, is no less than a similar-
ly treated widow or orphan entitled on application
to judicial relief." (BLACK and SOURIS, JJ.)

To the attorney general and CSC it does not seem
to have mattered that said section 9, couched as it
is in elementary English, has since 1954 directed
that "The commission shall give *prompt* considera-
tion to such request and the grounds of complaint
therein set out and shall *promptly* redetermine the
liability of such corporation." What seems to have
motivated these public officers is that strangely
developing notion of high level politics that the State
is above the law and so may demand and take
discriminatory privileges unknown to the law. Plain

---

[2] It turned out that this would have been a long hold "in abey-
ance." Edison's appeal was not decided by the appeal board until
January 22, 1964, and the refund was not paid until October 30,
1964. Details appear, *post.*

to any objective reader of this total record is the despotic message: "That word 'promptly' in the statute doesn't mean anything to us; we act at our own leisurely pleasure; so far as Detroit Edison is concerned we just aren't pleased to act under the statute until that particular taxpayer comes to *our* terms." The conclusion becomes the more evident as one contemplates the current status of this "class action" for declaratory relief (out of which came the instant appeal). Particulars of that status will appear, *post*.

Probably no more arrogant declaration of intent to abuse the power of a State has ever entered a judicial record than that letter of April 21, 1959 (quoted in full, 361 Mich 290, 302–304); the letter which advised that Detroit Edison's overdue certificate of corporate good standing would be issued *when and only when that taxpayer* (a) *terminated its then pending efforts to obtain redress in the court of claims and* (b) *dropped its pending requests for refund.* The gut paragraph of that letter will bear repeating, now that so much time has gone by since it and the attorney general's dovetailing motion "to hold in abeyance" came to attention here (emphasis supplied):

"Under this order [court of claims order], it is the position of this commission that you are entitled to a certificate of good standing so long as there has been no redetermination made by the commission and so long as the court matter is held in abeyance. This means that the issuance of the certificate of good standing without exception is conditioned upon your *not* taking any further proceedings in the court of claims, including *not* filing any motion for rehearing, and upon your *not* taking any further steps in regard to the redetermination of your 1958 franchise privilege fee before the corporation and securities commission, including demanding the re-

fund of the amounts referred to in my letter of February 4, 1959."

Now for the attorney general's said motion "to hold in abeyance" and the background thereof, to which reference was made in the second *Edison Case* (361 Mich 290, 297).

Edison sued in the court of claims January 23, 1959, to secure refund of the sum of $119,129.25, said by Edison as having been exacted by CSC in excess of Edison's duly paid 1958 franchise fee, such paid fee having been $1,472,824.76 in amount. The attorney general moved to dismiss February 6, 1959. Then, before hearing of the motion to dismiss, he filed (February 23, 1959) the aforesaid motion to "hold in abeyance."[3] That motion was granted below by order dated March 27, 1959, whereupon Edi-

---

[3] The reasons assigned by the attorney general, for delaying the court of claims action, appeared in paragraphs 2 and 3 of his motion. He alleged:

"2. The plaintiff [as set forth in defendants' motion and affidavit in support thereof] has now pending before the corporation tax appeal board, in *Detroit Edison Company v. Corporation & Securities Commission, supra,* Docket No 57–3, the identical question sought to be raised in this cause but involving its 1956 franchise privilege fee. If aggrieved by the recomputation made of its 1956 privilege fee by the corporation tax appeal board, plaintiff may appeal within 30 days after a final determination by the board to the Supreme Court for a judicial review of the subject matter. The plaintiff thus has a complete and adequate remedy to have finally adjudicated, in its appeal now submitted to the corporation tax appeal board, the identical subject matter it seeks to have adjudicated in this cause, which adjudication will finally resolve any controversy that might exist between the parties over the item 'reserve for deferred Federal income taxes,' for franchise fee computation purposes. Therefore, this cause should be held in abeyance until such final adjudication of plaintiff's appeal in regard to its 1956 franchise fee.

"3. The plaintiff's action is premature because plaintiff has not exhausted its administrative remedies as set forth in PA 1921, No 85, §§ 9, 10, as amended by PA 1954, No 153, which specifically provide for appeals from redeterminations of the defendant commission to the corporation tax appeal board, an administrative agency created by statute for final determination on the administrative level of any controversy involving the computation of franchise privilege fees. Therefore, this cause should be held in abeyance until the plaintiff has exhausted its administrative remedies and availed itself of the primary jurisdiction of the corporation tax appeal board, as it did in reference to its 1956 franchise fee questions."

son applied for leave to review.   July 13, 1959 this
Court set aside the March 27 order and directed
that "the cause be remanded to the court [of claims]
for prompt hearing and determination of defendants'
pending motion to dismiss."   (Our order appears in
full, 361 Mich 290, 299.)   The motion to dismiss was
granted by the court of claims November 2, 1959,
and reversed on appeal the next year (361 Mich 290).
By that decision this Court ruled unanimously that
the court of claims was, as against the attorney gen-
eral's motion to dismiss, possessed of plenary juris-
diction.

In the meantime additional chapters of litigation
and finally forced disposition entered the Edison-
CSC scroll which, by the undersigned, has now been
unrolled.   October 22, 1962 and October 26, 1962
Edison—then really held "in abeyance"—filed in this
Court two petitions for mandamus.   The petition
filed October 22 was to compel the statutorily due
processing of Edison's "annual reports for all years
from 1958 to date."   The petition filed October 26
was to compel administrative disposition of Edison's
statutory petition for refund of the paid-under-
protest portion of Edison's 1957 corporate franchise
fee.

The two petitions came finally to terse disposition
with issuance of our peremptory order of June 9,
1966.   We directed that the defendant "proceed at
once with statutory processing of the Detroit Edison
Company's pending petition for refund and the De-
troit Edison Company's pending requests for de-
termination and/or redetermination of its annual
franchise privilege fees as identified in our order to
show cause dated April 9, 1965."   (*Detroit Edison
Company* v. *Department of Treasury,* 378 Mich 167.)

The 1956 refund issue was not decided adminis-
tratively until January 22, 1964.   Then the appeal
board, proceeding under said section 10, ruled:

"The board finds that it is bound by the decision in the case of *Detroit Edison Company* v. *Corporation & Securities Commission,* 367 Mich 104, to treat the 'reserve for deferred Federal income taxes' as not surplus until the public service commission by order prescribes different accounting procedures",

and directed refund to Edison of the sum of $52,-698.31. (Interest on that sum increased the refund to $69,258.67 as of October 15, 1964. See stipulation, quoted below.)

The attorney general claimed an appeal of right to this Court from the appeal board's decision. The appeal was dismissed for want of application and leave. Then came the attorney general's application for leave to take delayed appeal. That application was granted. The appeal however was not pursued. The attorney general finally dropped it and CSC complied with the appeal board's order. That was done by stipulation, filed with our clerk October 30, 1964:

"Now come the Michigan corporation & securities commission, appellant (appellee before the board), by its attorney, the Honorable Frank J. Kelley, attorney general of the State of Michigan, and the Detroit Edison Company, appellee (appellant before the board), by its attorneys of record, Fischer, Sprague, Franklin & Ford, and stipulate that the appeal of the Michigan corporation & securities commission, and the cross-appeal of the Detroit Edison Company, be withdrawn and dismissed, without costs to either party; that the decision of the corporation tax appeal board of January 22, 1964, remain in full force and effect; and that the State of Michigan (Michigan corporation & securities commission) pay forthwith to the Detroit Edison Company the sum of $69,258.67 plus interest at the rate of 5% from October 15, 1964, if paid after December 1, 1964,"

Thus the 1956 refund issue came to an end in 1964. In the meantime the 1958 refund issue had come to its separate end by affirmance of the court of claims' judgment against the State in *Detroit Edison Company* v. *Corporation & Securities Commission,* 367 Mich 104. The State paid that judgment about July 8, 1963.

As for the refund due Edison for the year 1957, the amount thereof is $85,528.05 plus accrued interest. To secure such refund Edison has been compelled to resort again to suit in the court of claims. Its suit was commenced in that court after the department of treasury[4] denied (June 14, 1966) Edison's refund request—filed under said section 10— for the year 1957.

Aside from the attorney general's current appeal (considered presently), the pertinent history of and litigatory situation as between Edison and the State has arrived at this point. The State finally paid Edison's claim of overexactions of 1956 and 1958 franchise fees. Edison's suit for refund of the corresponding overexaction of 1957 is pending before the court of claims. Edison's appeal from determination in 1966 by the department of treasury, that Edison owes a deficiency for each of the years 1959 through 1966, is pending before the Ingham circuit (*Detroit Edison Company* v. *Department of Treasury,* Ingham Docket No. 5632–C). All this litigation has turned upon the 1961–1966 insistence of the State's legal department that Edison's suit in the court of claims, to recover the amount paid under protest in 1958, resulted in no adjudication as between the parties beyond obligation of the State to make refund to Edison in such amount.

The Justice to whom this appeal was assigned has prepared and submitted an opinion standing for af-

4 Substituted as statutory successor and party defendant in the mandamus actions of 1962. See 378 Mich 167.

firmance. With the result of that opinion I agree. As for the declared reasoning to such result, I am unable to concur. Our difference of viewpoint seems to turn upon the identity of the judgment which created the agreed former adjudication and now effectuates it.

If by the judgment entered in the court of claims Edison not only may but must account, report, and pay as held by Judge Quinn,[5] and if by that judgment the State became bound as ruled by him, the estoppel by adjudication stands upon the legal force of what was done in the court of claims, not by anything done in this Court on July 2, 1962, that being the date our two opinions were filed and this Court's order of affirmance was entered. See, again, 367 Mich 104. The legal effect of that order of affirmance was simply to make final the determination of the court of claims. The latter is the final adjudication before us, not the former. The reason is that our 2-against-2 opinions (with 1 Justice voting to affirm without opinion) stand as briefs only for and against the points of law argued therein. Those briefs are of value only to those *not* bound by Judge Quinn's said rulings. If not otherwise bound, they alone remain free to litigate such points of law anew, whereas the present parties are not.

Perhaps the unimpeachable demonstrative evidence, when that is placed in array with polemics for and against, will persuade that the conclusion reached above is soundly right. In that focus refer to our order of July 2, 1962, appearing in 25 Supreme Court Journal 133. Opposite the title, "The Detroit Edison Co. v. State of Michigan," No. 49,272, the order of affirmance reads:

---

[5] Judge Quinn, then circuit judge of the 40th circuit, was seated at the time as judge of the court of claims. He is now a distinguished member of Michigan's Court of Appeals.

"This cause having been brought to this Court by appeal from the court of claims, and having been argued by counsel, and due deliberation had thereon, it is now ordered by the Court, that the judgment of the court of claims be and the same is hereby AFFIRMED. It is further ordered that no costs be awarded herein. Justices SMITH, ADAMS, and T. M. KAVANAGH did not participate."

This order was entered and signed *for the Court,* with due authority *of the Court,* by Chief Justice CARR. The Chief Justice was one of the dissenters from, not one of the proponents of, *the Court's* affirming decision. See 367 Mich 104, 106. So much, then, for the attorney general's position that what was done July 2, 1962 was a determination by two Justices only. The determination to affirm was that of *the Court.* It had to be and stands that way now. Since it did not disturb anything done or entered by the court of claims, the affirmed adjudication by the court of claims concludes, or at least should conclude, the present appeal.

Our only remaining inquiry is this: What did the court of claims, by its opinion and judgment upon that opinion, determine that now binds these same parties? I answer, from the record:

The opinion and judgment determined that Detroit Edison, a public utility which by statute is subject to the superintendence and statutorily authorized administrative orders of PSC, had lawfully calculated and paid its 1958 franchise fee in accordance with PSC orders of 1951 and 1954 (for the orders see 367 Mich 104, 113-115); that pretrial stipulated question 4(a)[6] should consequently re-

---

[6] Question 4(a) appears, with Judge Quinn's treatment thereof, in 367 Mich 104, 107. Pretrial stipulated, it reads:

"Is the corporation and securities commission bound by the accounting procedures set up by the Michigan public service commission with respect to utilities in determining the annual franchise fee?"

ceive an affirmative answer; and that Edison was entitled to a judgment for refund by the State of that which CSC had forced it to pay in excess of such calculation and payment. The judgment settled as between Edison and the State, once for all until the statutory law or administrative orders upon which it was based should come to alteration or repeal, that CSC (and that means the State) is bound by the accounting procedures set up by PSC "with respect to utilities in determining the annual franchise fee."

There is more; an intervening fact which ought to seal Judge Quinn's judgment as a monolith of applicable adjudication binding Edison and the State. See reference, 367 Mich 104, 110, to the series of public hearings which, by PSC, had been instituted and were pending at the time to determine whether PSC should or should not retain the accounting policy set forth in its said orders and other like public utility orders. In the subsequent *McLouth Case* (372 Mich 76) it was brought to the Court's attention that PSC had completed those hearings and, under date of June 13, 1963, had entered an 86-page opinion and order determining that its previous policy, reflected in the mentioned orders to Edison of 1951 and 1954, should for stated reasons remain in full effect. A copy of such opinion and order was made a part of our clerk's file of the *McLouth Case* on July 9, 1963. It carries the commission's case number U–915 and is entitled "In the matter of the investigation of accounting and rate case treatment of liberalized depreciation methods provided by section 167 of the internal revenue code of 1954."

Now for the present appeal, filed by the attorney general from the judgment which affirmed grant by the Ingham circuit of Edison's motion for summary

judgment, *Corporation & Securities Commission* v. *American Motors Corporation (Appeal re Detroit Edison Company)*, 4 Mich App 65.

The case was instituted by the attorney general February 10, 1964. Framed as a class action for declaratory relief under GCR 1963 208.1 and 521.1, the defendants named were American Motors Corporation, General Motors Corporation, Michigan Consolidated Gas Company, McLouth Steel Corporation, The Detroit Edison Company, Parke Davis & Company, General Telephone Company of Michigan, Leonard Refineries, Inc., Winkelman Brothers Apparel, Inc., Indiana & Michigan Electric Company, Huck Manufacturing Company, Interstate Motor Freight System, Associated Truck Lines, Inc., "and others." The calendar entries show, however, that the action, if as alleged the design thereof was that of obtaining a declared determination of "a common question of law or fact affecting the several rights" of the defendant class, has since definitely lost its character. One after the other defendants Indiana & Michigan Electric Company, General Motors Corporation,[7] Michigan Consolidated Gas Company, Leonard Refineries, Inc., Huck Manufacturing Company, American Motors Company, McLouth Steel Corporation and Parke-Davis & Company have been let out in circuit by separate judgments of dismissal. As to defendants Indiana & Michigan Electric Company and General Motors Corporation, the dismissals were effected by separate stipulations signed by the attorney general. As to the other dismissed defendants, only the *Edison, McLouth* and *Michigan Consolidated Gas Company* dismissals have, thus far, come to review. See 4 Mich App 65 (*Edison*); 7 Mich App 410 (*McLouth*); and 7 Mich App 552 (*Michigan Consolidated Gas Company*).

---

[7] General Motors' principally assigned reasons for dismissal by accelerated judgment are impressive. See appendix hereto.

Such is the current record status of the attorney general's latest effort to relitigate the State's claims against Edison which, in the court of claims, came to initial presentation in January of 1959. No further discussion is required save that of calling to attention what was written in unanimous *W. H. Atkinson Co.* v. *State Board of Tax Administration*, 299 Mich 315, 319:

"The court in the former adjudication held that, under the statute, plaintiff was not liable for the tax and awarded judgment for the return thereof, paid under protest. Without any change in the statute bearing upon such right the same questions are presented on the same but later facts, and we are asked to adjudicate anew between the parties.

"Opportunity to have the statute amended, if desired, has been afforded by seven years' time, and there has been none with respect to the issues at bar. The defendant board has made some changes in regulations but such have not the force of statute law and in no way affect the issues here involved."

I concur in affirmance. Detroit Edison should have costs of all 3 courts. No question affecting others than the State as plaintiff and Detroit Edison as defendant was submitted by the motion of Edison which was granted in circuit and affirmed by the court of appeals. Hence there was and is no "public" question.

## APPENDIX

[Paragraphs (2), (4) and (7) of defendant General Motors Corporation's motion for accelerated judgment filed June 8, 1964.]

"(2) This Court lacks jurisdiction of the subject matter of plaintiffs' complaint for the reason that it asks this Court to write a comprehensive set of tax regulations prescribing the myriad details of

accounting methods and procedures to be employed by all corporations subject to the annual privilege fees imposed by PA 1921, No 85, as amended (CL 1948, § 450.301 *et seq.* (Stat Ann 1963 Rev § 21.201 *et seq.*), and neither such act nor any other law of the State of Michigan authorizes plaintiffs or this Court to prescribe any such regulations, such matters being a legislative function beyond the powers of plaintiffs and this Court."

"(4) This Court lacks jurisdiction of the subject matter of plaintiffs' complaint for the reason that PA 1921, No 85, §§ 4, 5 and 9, as amended (CL 1948, §§ 450.304, 450.305 and 450.309 [Stat Ann 1963 Rev §§ 21.205, 21.208 and 21.210]), vest in plaintiffs jurisdiction to compute, determine, and redetermine the annual Michigan corporate privilege fee, and plaintiffs are improperly asking this Court to substitute its judgment for those duties which are imposed by statute upon plaintiffs."

"(7) Plaintiffs' complaint fails to state a cause of action as a class action under GCR 1963, 208 because no joint and common rights are involved and sought to be enforced against the named defendants and other corporations and the subject matter does not involve common questions of law or fact affecting the several defendants and relief common to each defendant but involves a myriad of facts and issues peculiar to each defendant and hence defendants do not constitute a proper class, and there is a misjoinder of claims and defendants inasmuch as plaintiffs have no right to relief against all defendants arising out of the same transaction, occurrence or series of transactions or occurrences."